**UNITED STATES of America**

**v.**

**Irving GOLDMAN, Defendant.**

**No. 75 Cr. 337.**

United States District Court,
S. D. New York.

Oct. 28, 1977.

Robert B. Fiske, Jr., U. S. Atty., S.D. N.Y., New York City, for the Government; by Audrey Strauss, Daniel T. Beller, Asst. U. S. Attys., New York City, of counsel.

Friedman & Gass, P. C., Millard, Greene & Udell, New York City, for defendant; Arthur S. Friedman, Peter N. Wang, New York City, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

On August 23, 1977, the trial of defendant Irving Goldman on charges of conspiracy and mail fraud commenced. The trial was aborted on September 6, 1977, when I declared a mistrial during the redirect examination of the government's chief witness. Pending retrial, defendant has moved to dismiss the indictment on the grounds that retrial would place him in double jeopardy in violation of his rights under the Fifth Amendment to the Constitution and would deprive him of his rights to a speedy trial under the Speedy Trial Act of 1974, 18 U.S.C. § 3161 *et seq.*

**360**

■ The Fifth Amendment's prohibition against placing a defendant in double jeopardy does not bar the retrial of a defendant who has requested or consented to a mistrial for prosecutorial or judicial error, so long as the error was not the product of intentional provocation or bad faith. *Lee v. United States*, 432 U.S. 23, 2146–2147, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977); *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). Consent need not be express; rather, it may be implied from a totality of the circumstances. *United States v. Goldstein*, 479 F.2d 1061 (2d Cir.), *cert. denied*, 414 U.S. 873, 94 S.Ct. 151, 38 L.Ed.2d 113 (1973).

■ A different situation is presented, however, when a mistrial is declared by the court *sua sponte*, in the absence of a request or consent by the defendant. In such a case, the double jeopardy clause precludes retrial unless the court makes explicit findings that no reasonable alternative curative measures exist. *United States v. Grasso*, 552 F.2d 46 (2d Cir. 1977), *cert. pending*, 45 U.S.L.W. 3781 (May 31, 1977).

■ Recognizing that double jeopardy claims "turn on the particular facts . . ." *Illinois v. Somerville*, 410 U.S. 458, 464, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973), defendant has attempted to shape the facts precipitating the mistrial declaration in this case to fit into those legally recognized precepts which would bar his retrial. Thus, he argues that the mistrial was deliberately provoked and forced upon him by the government and declared by this Court *sua sponte* without his request or consent and in the absence of findings. The record, however, belies his view both as to the precipitating cause of the mistrial and his lack of involvement in its declaration.

The events leading to the mistrial declaration began with certain questioning on redirect examination by the government of Jack Zander, its chief witness and an alleged co-conspirator. The government elicited from Zander that he had admitted to the prosecutor the previous afternoon that he had not been truthful with respect to certain areas of his testimony on cross-examination. Zander than testified to his receipt of certain cash payments from defendant. The prosecutor then began to question Zander about the substance of their prior discussion. To demonstrate that Zander's testimony regarding the sequence of statements made during that discussion was inconsistent with the prosecutor's notes of the meeting, the government requested that he be treated as a hostile witness. This request was granted.

During the course of the questioning that ensued, the following exchange took place between the prosecutor and Zander:

Q. Do you remember saying to me then "What if Mr. Goldman says I received cash?"?

A. Yes.

Q. And do you remember my telling you that you shouldn't count on the fact that it would be one on one, your word against his?

A. Well—yes, you made that comment.

Q. And do you remember at that point you told me that you had received $1500 or so of cash from him? Do you remember that?

A. $1500?

Q. $1500, Mr. Zander. Do you remember saying that at that time?

A. I received various sums. I don't remember—I don't know which incident you are referring to.

Q. What did you tell me initially? How much cash did you—

A. Oh, the initial thing I ever received was through U.S. Candy.

Q. Mr. Zander, when I said to you that you should not count on it being one on one, your word against Mr. Goldman's word, and I asked you did you receive any cash from Mr. Goldman, and you said to me that you did, do you recall you told me at that point—

A. Yes.

(Transcript 737–38).

At this point, defense counsel requested a side bar conference. A recess was taken

and a conference was held in the robing room. The following transpired:

MR. FRIEDMAN: If your Honor please, one question came in and I didn't rise to object to it. The second one has just come now.

What Ms. Strauss is doing as part of the sanitation process, whether she intends it or not, is to force a mistrial. What is happening is she is talking about one on one, that is to say Zander against Goldman, when she knows very well that there is a question about whether Goldman will take the stand or—

THE COURT: Listen, I was there. I watched it. I heard it. I was surprised you didn't object.

MR. FRIEDMAN: I have done it now, Judge. I have done it now. It has been repeated for the second time. It is an outrage to have that laid before the jury that way.

MS. STRAUSS: Judge, what I was—

MR. FRIEDMAN: This is being done deliberately. These are not accidental questions.

THE COURT: No. It was said yesterday. She is not intending or looking for a mistrial in this case. There is no question of that at all. But the effect is such that there is a question in my mind as to whether the prosecutor at this point, even though inadvertently, is calling upon the defendant to take the stand.

MS. STRAUSS: Your Honor, it is exactly the opposite implication.

THE COURT: I know what you are intending and I'm not saying it is personal in any way. I know it is not intentional. There it is. It is "one on one." If "one on one" gets repeated enough times, the jury is going to say that means that the defendant is going to take the stand. (Transcript 739–40).

The prosecutor then argued her position that the phrase "one on one" in the context of the testimony implied not that defendant would take the stand and refute the payment to Zander but that defendant might come forward at a later date and testify against Zander. At her suggestion that this latter implication be brought to the jury's attention, I noted that such would tend to "compoun[d] the confusion," and defense counsel stated, "That is seven times fold." (Transcript 742). As the conference drew to a close, I restated my belief in the unintentional nature of the prosecutor's question, to which defense counsel replied, "It doesn't have to be malicious to be prejudicial." (Transcript 743).

After recessing, a second robing room conference was held. At that time, defense counsel noted that I had reserved decision on his various motions to dismiss the indictment on other grounds relating to prosecutorial conduct and he urged dismissal adding misconduct of the witness as a ground. Prior to moving for dismissal, he mentioned that he had conferred with defendant during the recess. Referring to my prior decision after a pretrial medical hearing that defendant was fit to stand trial, he stated:

I don't know if your Honor had in mind that [Goldman] would face the prospect if a mistrial be granted of standing two trials. In my own judgment, and it is only my judgment, anybody that would do with this indictment anything further, if it was a mistrial, that is their business, Judge.

The motion to dismiss the indictment was denied. In so denying it, I stated, "A mistrial, yes, dismissal there is insufficient here if we went through the entire thing . . ." (Transcript 746). Defense counsel replied, "Your Honor makes the rulings, I make the applications and I gave the reason that I see fit." (Transcript 746). Referring again to matters on which I had reserved decision, defense counsel remarked about my patience. I commented, "This last one blew it. That's all I can say." (Transcript 747). Defense counsel did not reply.

At this juncture, I reassumed the bench and stated, "There is an outstanding motion, a motion for a mistrial. That motion is granted." (Transcript 747). Prior to dismissing the jury, I heard reargument on the issue in the robing room. Upon entering the robing room, in response to the prosecutor's comment, I repeated that the motion

"[f]or dismissal of the indictment was denied." (Transcript 748). The prosecutor proceeded to argue that in the government's view, the "one on one" questions did not, in context, call on the defendant to take the stand, and that an instruction favorable to defendant might dispel an adverse inference. Having reviewed this possibility and rejected it, I stated that "There is no way that I can see of correcting it." (Transcript 755). Apart from thanking the Court (Transcript 755), defense counsel was silent through this conference.

■ Because defendant's position puts in issue his "valued right to have his trial completed by a particular tribunal," *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949), I have engaged in this lengthy recitation of the record in order to afford his double jeopardy claim complete consideration. However, the record clearly establishes what I continue to perceive as a defense motion for a mistrial; at the very least, it demonstrates defense consent thereto.

The first robing room conference was at the defense counsel's request. It was at that time that counsel raised the issue of a mistrial and strenuously objected to the prosecutor implicitly calling on Goldman to take the stand. That counsel understood himself to have moved for a mistrial is reflected in his comments at that time and in his statement at the outset of the second conference that defendant would face a second trial "if a mistrial be *granted*." (emphasis added). When his motion to dismiss was denied, he emphasized that it was his job to make the various applications, giving his reasons therefor. That I understood that the defense had moved for a mistrial is apparent from my references to the same both to the parties in conference and to the jury in open court.

Even if the record were construed as failing to support my continued perception of an express motion, clearly it evidences defense counsel's consent to a mistrial. Counsel urged the necessity of a mistrial and objected to the prosecutor's suggestion of a curative instruction. He acknowledged that the granting of a mistrial would necessitate defendant's facing a second trial. He was present when I announced that I was granting an outstanding mistrial motion and failed to disabuse me of that view although he had ample opportunity to do so. Indeed, he sat silent while the prosecutor argued against mistrial, and after I rejected that argument, thanked the Court. While a failure to object to a mistrial may not, in and of itself, constitute consent, *see United States v. Grasso*, supra, at 50, it is a factor to be considered. *United States v. Goldstein*, supra, at 1067–68 n. 11. The totality of the circumstances attendant on the declaration of mistrial in this case points to only one reasonable conclusion—that defendant consented to, if not expressly requested, the mistrial.

■ Defendant's claim of prosecutional overreaching barring retrial is likewise unsupported by the record. The prosecutor repeatedly emphasized her belief that the jury would not logically infer that the government was calling on defendant to take the stand. Indeed, defense counsel stated initially that the prosecutor was forcing a mistrial "whether she intends it or not" and subsequently, that her questioning of Zander did not "have to be malicious to be prejudicial." Yet without intentional provocation or bad faith, prosecutional error, even if prejudicial, resulting in a mistrial is insufficient to bar retrial on double jeopardy grounds. *United States v. Jorn*, supra. The record is replete with my findings that the error committed here was unintentional. Thus, defendant's double jeopardy claim must fail.

■ Defendant's claim that retrial would violate his speedy trial rights is palpably without merit. On August 16, 1977, I rejected defendant's claim that he was denied his speedy trial rights under the Sixth Amendment to the Constitution, the Speedy Trial Act, 18 U.S.C. § 3161 et seq., the Southern District Plan for Achieving Prompt Disposition of Criminal Cases and the Second Circuit Rules Regarding Prompt Disposition of Criminal Cases. At that time I determined that the trial would commence

within the 180 day requirement of the Speedy Trial Act and the local rules. Defendant now contends that since the speedy trial clock resumed running on September 6, 1977, the date of the mistrial, retrial would commence outside the remainder of the original 180-day period in violation of his rights.

The Speedy Trial Act and presently operating implementing Southern District Plan for Achieving Prompt Disposition of Criminal Cases expressly provide that in the event of a mistrial, "trial shall commence within sixty days . . ." 18 U.S.C. § 3161(e); Rule 5(b) of the Statement of Time Limits and Procedures for Achieving Prompt Disposition of Criminal Cases (the Statement). Moreover, in computing the sixty-day period for retrials, "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement," is excluded. 18 U.S.C. § 3161(h)(1)(G); Rule 10(a) of the Statement. *See United States v. Bubar,* 567 F.2d 192, 208, (2d Cir. 1977). According to the Act and local rules, then, the sixty day period, assuming no exclusionary time within which defendant would have to be retried, would end on November 5, 1977. However, the period of time representing the pendency of the instant motion is excluded from that calculation. There has thus been no present violation of defendant's rights in this respect.

Defendant's motion to dismiss the indictment is denied.

SO ORDERED.