**UNITED STATES of America**

v.

**Irving GOLDMAN, Defendant.**

**No. 75 Cr. 337.**

United States District Court,
S. D. New York.

April 6, 1978.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for Government by Daniel J. Beller, Asst. U. S. Atty., New York City, of counsel.

Friedman & Gass, P. C., Millard, Greene & Udell, New York City, for defendant by Arthur S. Friedman, Peter N. Wang, New York City, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Defendant has moved for an order pursuant to Rule 12(b), F.R.Crim.P., dismissing the indictment on the ground that it is based on false testimony presented to the Grand Jury.[1]

The charges of conspiracy and mail fraud for which defendant Irving Goldman was indicted on April 1, 1975 stem from the alleged dealings between Jola Candy Co., Inc. ("Jola"), of which Goldman was president and chief operating officer, and Interborough News Company, Inc. ("Interborough"), a subsidiary of Sportservice Corporation ("Sportservice") of Buffalo, New York, of which Jack Zander, named in the indictment as an unindicted co-conspirator, was president and which was under contract with the New York City Transit Authority ("Transit Authority") to supply vending machine products in New York City subway stations. The indictment charges that in January 1967, Goldman and Zander embarked on a scheme to defraud Interborough, the Transit Authority and the United States, and that Goldman engaged in numerous instances of mail fraud by the mailing of various checks and invoices in connection with this scheme.

The scheme to defraud Interborough was purportedly accomplished as follows: Interborough, at Zander's direction, would order vending machine products directly from manufacturers and suppliers for delivery to that company in New York City, and would arrange for the bills and invoices therefor to be sent to Jola. Jola would pay these bills and invoice Interborough for the merchandise at inflated prices or at prices which failed to reflect that certain merchandise had been delivered to Interborough free of charge. Zander would then cause Sportservice, of which he became president in 1973, to pay Jola, and Goldman would draw checks reflecting these payments on the Jola account to his and Zander's children. Zander's interest in the Jola profits realized as a result of these transactions, conducted through the use of the mails, was purportedly concealed from Interborough and Sportservice.

According to the indictment, the scheme to defraud the Transit Authority resulted from Goldman's preparation of false Jola invoices, which Zander would cause Sportservice to pay and the proceeds of which would be used to bribe a Transit Authority official. The indictment also charges that Goldman caused the filing of false income tax returns for Jola and thus conspired to defraud the United States and the Internal Revenue Service.

Trial of this indictment commenced on August 25, 1977 and ended in a mistrial declared on September 6, 1977 during the redirect examination of Zander, the government's chief witness. *See United States v. Goldman,* 439 F.Supp. 358 (S.D.N.Y.1977), *aff'd from bench,* 573 F.2d 1297 (2d Cir. 1978). Prior to the mistrial declaration, the prosecutor elicited from Zander that he had admitted to her at a meeting the previous afternoon that he had testified falsely on cross-examination when he denied having received any monies or things of value, other than salary, in connection with his business, and that, in fact, he had been receiving cash payments from Goldman during the Jola venture and as early as 1966

---

1. Defendant alternatively has moved for a continuance of the trial based on his alleged physical inability to stand trial. My determination on his motion to dismiss the indictment, however, renders moot this alternative application.

when Interborough was dealing with Jola's predecessor, United States Candy Company. On the basis of this admission, Zander was charged on November 17, 1977 in a one-count information with perjury at the trial.

The prosecutor's notes of her meeting with Zander, a copy of which were furnished defense counsel, reveal that Zander stated at the meeting that he recalled having lied before the Grand Jury with respect to the receipt of these payments from the defendant. The minutes of Zander's Grand Jury testimony, which incorporated his testimony before a State grand jury, confirms this recollection. Indeed, the government has conceded, at oral argument of the instant motion on March 10, 1978, that Zander's Grand Jury testimony was false. (Tr. at p. 16).

█ While it is generally established that a facially valid indictment returned by a duly constituted and unbiased grand jury is not subject to independent inquiry into the adequacy and competency of the evidence upon which it is based, *United States v. Calendra,* 414 U.S. 338, 345, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956), due process nevertheless imposes certain restrictions on the type of evidence a prosecutor may knowingly present for grand jury consideration. *See e. g., United States v. Basurto,* 497 F.2d 781, 785–87 (9th Cir. 1974); *United States v. Provenzano,* 440 F.Supp. 561, 565–66 (S.D.N.Y.1977); *United States v. Gallo,* 394 F.Supp. 310, 315–16 (D.Conn.1975). *See generally, United States v. Guillette,* 547 F.2d 743, 752–53 (2d Cir. 1976). In seeking dismissal of the indictment, defendant relies on one such restriction, formulated by the Court of Appeals for the Ninth Circuit in *United States v. Basurto, supra.*

In *Basurto* the prosecutor learned prior to trial that an unindicted co-conspirator, who testified to the defendants' activities before the grand jury, had lied in material respects. Instead of immediately notifying the court or the grand jury of the perjury, the prosecutor proceeded to trial, revealing the fact of the witness' false grand jury

testimony in his opening statement to the trial jury. In reversing the defendants' conviction and dismissing the indictment, the court ruled:

We hold that the Due Process Clause of the Fifth Amendment is violated when a defendant has to stand trial on an indictment which the government knows is based partially on perjured testimony, when the perjured testimony is material, and when jeopardy has not attached. Whenever the prosecutor learns of any perjury committed before the grand jury, he is under a duty to immediately inform the court and opposing counsel—and, if the perjury may be material, also the grand jury—in order that appropriate action may be taken.

*Id.* at 785–86.

█ It would appear that the principles enunciated in *Basurto,* and approved in dicta by the Second Circuit in *United States v. Guillette, supra,* control the disposition of this case. The government has conceded, and the transcript of the grand jury proceedings indicates, that Zander's grand jury testimony with respect to the cash payments purportedly received from Goldman was false. Although several other witnesses appeared before the grand jury, an examination of the record of those proceedings reveals that Zander's testimony was crucial to Goldman's indictment. The government has seen fit to charge Zander with perjury at trial on the basis of the same falsehood which was placed before the grand jury; since the information charges that this false testimony at trial was "material," it hardly lies for the Government to contend that the same false testimony was not "material" before the grand jury. In light of my previous determination that Goldman is not now, after the mistrial, in jeopardy within the meaning of the Fifth Amendment's prohibition against double jeopardy, 439 F.Supp. 358, *aff'd from bench,* 77–1459 (2d Cir. February 15, 1978), it would seem that the appropriate action to be taken at this juncture is to require the

government to seek a new indictment untainted by perjury.[2]

The government contends, however, that Zander's recantation only adversely impacts the government's case and does not prejudice defendant. Relying on *United States v. Kaplan,* 554 F.2d 958, 970 (9th Cir. 1977), the government argues that prejudice to Goldman is essential before a finding of materiality can be made. This reliance is misplaced. In *Kaplan,* a non-perjury case, the defendant argued that by analogy to *Basurto,* prosecutorial failure to notify the grand jury of the defendant's status as a government informer mandated dismissal of the indictment. This argument was raised for the first time on appeal; consequently a showing of fundamental error was required. Since the defendant failed to show that his informer role actually exculpated him, his argument was rejected. *Id.* at 970. Here, however, not only has the issue of Zander's false grand jury testimony been raised at an appropriate time, but the government impliedly has conceded the materiality of the testimony by charging Zander with perjury on the basis of similar trial testimony.

The government also argues that under *United States v. Guillette, supra,* the indictment must be upheld since Zander's "perjury" before the grand jury is relevant only to the extent that it undermines his credibility. In *Guillette* the government's key witness recanted admittedly perjurious trial testimony relating to his use of certain aliases and his receipt of psychiatric treatment. Since these issues were never explored before the grand jury, there was no indication that his grand jury testimony was false. Under those circumstances, "where subsequent events merely cast doubt on the credibility of grand jury witnesses," the Second Circuit held that due process did not require dismissal of the indictment. *Id.* at 753. Here, however, it is clear that Zander's recantation affected matters which were explored before the

Grand Jury, and which the government itself considered "material" at trial. Unlike *Guillette,* in which invalidation of the indictment would "necessitate independent judicial review of the credibility of grand jury witnesses, an exercise that would seriously infringe upon the traditional independence of the grand jury," *Id.,* dismissal in this case would preserve grand jury independence by allowing the grand jury to give the weight it deems appropriate to truthful testimony on matters it considers.

The critical question addressed by this motion, and acknowledged as such by the government, is what appropriate action must be taken to cure any possible injustice in light of Zander's disclosure to the government. *United States v. Guillette, supra,* 547 F.2d at 752–53; *United States v. Basurto, supra,* 497 F.2d at 786. Because this disclosure occurred during Goldman's trial rather than prior to trial, and the defense counsel could benefit from impeaching material of which it is aware, the government argues that dismissal of the indictment is inappropriate. However persuasive this argument might otherwise be, it is unavailing in light of the fact of the declaration of mistrial nullifying defendant's trial. "Where jeopardy has not yet attached, it generally is proper for the prosecutor [aware of materially false grand jury testimony] to return to the grand jury and seek a new indictment untainted by the perjury." *United States v. Guillette, supra,* 547 F.2d at 753. It is no less proper here.

Accordingly, defendant's motion to dismiss the indictment is granted.

SO ORDERED.

---

2. The expiration of the statute of limitations as to any of the events charged in the indictment would not bar a representment of the

case to the grand jury by virtue of 18 U.S.C. § 3288.