UNITED STATES of America,
Plaintiff-Appellee,

v.

George F. BROWN, Defendant-Appellant.

No. 77–5607.

United States Court of Appeals,
Fifth Circuit.

June 13, 1978.

Rehearing and Rehearing En Banc
Denied Aug. 10, 1978.

E. Drew McKinnis, Baton Rouge, La., for
defendant-appellant.

Donald L. Beckner, U. S. Atty., Darrell D.
White, Asst. U. S. Atty., Baton Rouge, La.,
for plaintiff-appellee.

Before SKELTON *, Senior Judge, and FAY and RUBIN, Circuit Judges.

SKELTON, Senior Judge.

The appellant, George F. Brown, was indicted by a Federal Grand Jury in Baton Rouge, Louisiana for receiving $15,000 from Dixie Brewing Company in 1974 and $15,000 from Falstaff Brewing Company in 1975, in connection with the passage of legislation by the Louisiana Legislature favorable to breweries, and failing to report such payments on his income tax returns, all in violation of 26 U.S.C. § 7206(1).[1]

Appellant was not a member of the Legislature, but was the Executive Director of the Beer Industry League of Louisiana and, as such, was in a position to influence legislation relative to breweries. These payments were first investigated by a Federal Grand Jury in New Orleans in connection with a conspiracy indictment (not involved in this appeal) returned against appellant and others. Later, the Government sent an agent before a Federal Grand Jury in Baton Rouge who summarized the evidence presented to the Grand Jury in New Orleans. No other witness appeared before the Baton Rouge Grand Jury. Thus, the indictment in the instant case was based solely on hearsay testimony, which is one of the circumstances complained of by appellant in this appeal.

The appellant was tried before a jury on a two-count indictment involving the two payments, and was found guilty on both counts by the jury. He was sentenced by the court on each count to a term of three years on condition that he be confined in a jail-type institution for 180 days, with suspension of the remainder of the sentence, to be followed by probation for 3 years beginning with his release from confinement, the sentences to run concurrently. The appellant then appealed to this court. We affirm, subject to the remand of a part of the case to the trial court with instructions, as set forth below.

The appellant filed pre-trial motions for discovery and to dismiss the indictment in which he complained of the indictment being based on hearsay evidence, and also alleging that the integrity of the grand jury proceedings had been impaired by the following incidents and circumstances:

(1) Failure to advise indicting grand jury that the witness Gregg had given inconsistent testimony in his two appearances before earlier grand jury in New Orleans;

(2) Failure to advise grand jury that the witnesses whose statements had been summarized before them had been immunized;

(3) That the summarized witnesses' statements did not support the facts alleged in indictment, and;

(4) That no substantial evidence was presented to grand jury to warrant the indictment.

The court issued a Reciprocal Uniform Discovery Order but denied the motion to dismiss the indictment.

■ Appellant's argument that the indictment should be dismissed because it is based on hearsay evidence is unpersuasive. By its very nature, the grand jury process is not an adversary proceeding. Its function is merely to determine if there is probable cause which warrants the defendant's being bound over for trial. A defendant has no right to require that the Government present all available evidence at this proceeding. The grand jury proceeding is a one-sided affair. The defendant is protect-

---

* Senior Judge of the United States Court of Claims, sitting by designation.

1. 26 U.S.C., § 7206(1) provides:
   "§ 7206. Fraud and false statements
   Any person who—
   (1) Declaration under penalties of perjury.— willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; . . . shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution. Aug. 16, 1954, c. 736, 68A Stat. 852."

**1276**

ed from such one-sidedness when, at the trial on the merits, he is "accorded the full protections of the Fifth and Fourteenth Amendments" and is "permitted to expose all of the facts bearing upon his guilt or innocence." *United States v. Chanen*, 549 F.2d 1306, 1311 (9 Cir. 1977).

Our decision in *United States v. Cruz*, 478 F.2d 408 (5 Cir. 1973) is dispositive of this argument. In that case we held that an indictment based on hearsay evidence is valid, saying:

"Grand Jury Hearsay

The appellants contend that their grand jury indictment was invalid because it was based on the hearsay testimony of one investigating FBI officer rather than on direct testimony of informant-witnesses whom the government could have summoned to testify. In *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), the Court considered and rejected the contention that an indictment based exclusively on hearsay evidence is constitutionally invalid. This reasoning has been followed on many occasions by this court. See, e. g., *United States v. Bird*, 456 F.2d 1023 (5th Cir. 1972); *United States v. Klaes*, 453 F.2d 1375 (5th Cir. 1972); *United States v. Howard*, 433 F.2d 1 (5th Cir. 1970), cert. denied, 401 U.S. 918, 91 S.Ct. 900, 27 L.Ed.2d 819 (1971)."

.    .    .    .    .

"While the presentation of hearsay testimony of an investigating officer in lieu of readily available testimony by direct witnesses is by no means a preferred procedure, it is neither unconstitutional nor inherently wrong. In the absence of some showing that the integrity of grand jury proceedings has been impaired, an indictment even if based exclusively on such testimony will not be overturned on appeal." 478 F.2d 410–411.

We hold that the trial court did not abuse his discretion in denying appellant's Motion to Dismiss the indictment even though it was based exclusively on hearsay evidence.

■ The complaint of appellant that the failure to advise the indicting grand jury that the witness Gregg had given inconsistent statements to another grand jury, and that witnesses whose statements were summarized for the grand jury had been granted immunity, bear on the credibility of such witnesses and is without merit. The Government is under no duty to present to a grand jury evidence bearing on the credibility of witnesses. This very question was decided adversely to appellant's contention by the Ninth Circuit Court of Appeals in *United States v. Chanen*, 549 F.2d 1306, 1311 (9 Cir. 1977) in which the court held;

"In *Loraine v. United States*, 396 F.2d 335 (9th Cir.), cert. denied, 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270 (1968), the defendant moved to dismiss the indictment on grounds that the prosecutor, in his presentation to the grand jury, wilfully suppressed evidence that would undermine the credibility of three crucial witnesses before the grand jury. Apparently, one witness had a criminal record and was then under indictment in several other cases; another witness had been charged with embezzlement; the last had been enjoined from dealing in securities. We held that

'the trial court did not err in refusing to invalidate a federal indictment because the Government did not produce before the grand jury all evidence in its possession tending to undermine the credibility of the witnesses appearing before that body. Loraine was accorded the full protections of the Fifth and Fourteenth Amendments, when, at the trial on the merits, he was permitted to expose all the facts bearing upon his guilt or innocence.' "

In the instant case, appellant was furnished a list of all the witnesses, except Gregg, who had been granted immunity, two months before the trial. There was some evidence that appellant knew before the trial began that Gregg had been granted immunity. In any event, appellant knew of his immunity during the trial and thoroughly cross-examined him with reference to it. As to Gregg's prior inconsistent

statements, appellant had every opportunity to present them to the jury and, in fact, did so. Appellant has not shown that he was prejudiced by the foregoing incidents. We find no error in this phase of the case. The appellant was given the full protections of the Fifth and Fourteenth Amendments when he was allowed to develop at the trial all of the facts bearing on his guilt or innocence.

■ Appellant's arguments that the summarized statements of the witnesses did not support the facts alleged in the indictment, and that no substantial evidence was presented to the grand jury to warrant the indictment, are unpersuasive. In *United States v. Cruz, supra*, we held:

> "Taking a different approach, the appellants argue that their indictments were invalid because the grand jury did not have before it any probative evidence, either hearsay or direct, upon which to base the indictments. However, the majority opinion in *Costello* also squarely rejected the contention that appellate courts may review the sufficiency of evidence supporting an indictment. 350 U.S. at 363, 76 S.Ct. at 408–409. The appellants' reliance on the concurring opinion of Mr. Justice Burton in *Costello* and on dicta in the pre-*Costello* opinion of this court, *Friscia v. United States*, 5 Cir., 63 F.2d 977, 980, *cert. denied*, 289 U.S. 762, 53 S.Ct. 797, 77 L.Ed. 1505 (1933), is misplaced. We will not review the sufficiency of the evidence, if any, supporting the grand jury indictments in this case. See *Cohen v. United States*, 436 F.2d 586 (5th Cir.), *cert. denied*, 403 U.S. 908, 91 S.Ct. 2215, 29 L.Ed.2d 684 (1971); *United States v. Gower*, 447 F.2d 187 (5th Cir.), *cert. denied*, 404 U.S. 850, 92 S.Ct. 84, 30 L.Ed.2d 88 (1971)." 478 F.2d 408 at 412.

See also *United States v. Calandra*, 414 U.S. 338, 344–345, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *United State v. Boerner*, 508 F.2d 1064, 1068 (5 Cir. 1975); and *United States v. Newcomb*, 488 F.2d 190, 192–193 (5 Cir. 1974).

Accordingly, we will not review the sufficiency of the evidence before the grand jury on which the indictment was based.

■ The appellant complains that the court erred in refusing to grant a mistrial or a continuance at the beginning of the trial based on the fact that he was not furnished a transcript of his testimony and that of certain prospective Government witnesses before the grand jury until two days before the trial. Even if the transcript should have been furnished to him earlier, appellant has not shown that he was prejudiced thereby. This is especially true since the Government did not use the transcript at the trial.

As stated above, the trial court issued a Reciprocal Uniform Discovery Order prior to the beginning of the trial. This order compelled disclosure of "all exculpatory evidence within the meaning of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Giles v. Maryland*, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967)." Appellant sought to supplement the order by written motion requesting that he be furnished with:

> "3. The materials contained in the files of the Internal Revenue Service relative to its investigation of defendant for the calendar years 1974 and 1975 which negate or which may tend to negate the receipt of unreported income by the defendant in the amounts alleged in the indictment. Included in this request are materials relative to any net worth analysis by Internal Revenue Service and the reports of its agents as to defendant's spending habits.

> "4. Any materials reflecting the name and current address of, and/or any statements of the Internal Revenue Service in connection with its investigation of defendant's 1974–1975 income tax returns, who either (1) was not called or put before the Grand Jury or (2) was called before the Grand Jury but will not be called as a witness at the trial."

The government answered this motion urging that this and other information sought is "beyond the scope of F.R.Cr.P. Rule 16 or has already been ordered dis-

closed." This motion was denied by the court. Appellant later urged substantially the same matters in a Motion to Dismiss, which was also denied. The appellant says that the court erred in denying these motions because the material he sought would have given him a "clean bill of health." He contended throughout the trial that the Falstaff and Dixie Brewing Companies that made the payments to him never intended that he was to receive any economic benefit from the money so paid, and that in fact he received no economic benefit therefrom.[2] The Government refused to furnish appellant any part of the Internal Revenue Service audit, saying that it was not relevant and the appellant was, therefore, not entitled to it.

The Government contends on this appeal that a substantial omission of income from his tax return by the appellant constituted a "material matter" within the contemplation of 26 U.S.C., § 7206, citing *Hoover v. United States*, 358 F.2d 87 (5 Cir. 1966), and that in a prosecution under the statute the lack of a tax deficiency is neither essential nor relevant, citing *United States v. Jernigan*, 411 F.2d 471, 473 (5 Cir. 1969), *cert. denied* 396 U.S. 927, 90 S.Ct. 262, 24 L.Ed.2d 225, and *Shepps v. United States*, 395 F.2d 749 (5 Cir. 1968), *cert. denied* 393 U.S. 925, 89 S.Ct. 256, 21 L.Ed.2d 261.

The Supreme Court and this court have held:

" . . . it is the power to dispose of income and the exercise of that power that determines whether taxable income has been received. *Helvering v. Horst* (1940) 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75; *Floyd v. Scofield*, 5th Cir. 1952, 193 F.2d 594." *Sammons v. United States* (5th Cir. 1970) 433 F.2d 728 at 732.

See also *Corless v. Bowers*, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916 (1930), and *Rutkin v. United States*, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833 (1952).

In the instant case, the trial court charged the jury:

"The test is whether or not the money was received together with unfettered control over the disposition of that money."

The appellant did not object to this charge. The Government says that the charge complies with the law and that the I.R.S. audit was not material or relevant to guilt or punishment. We cannot say in the present state of the record whether or not this is true, because we do not know what is contained in the audit. Evidence that is "material either to guilt or to punishment" should be disclosed under the *"Brady rule."* See *Moore v. Illinois*, 408 U.S. 786, 794, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972). The test for materiality of such evidence is whether the evidence "might have affected the outcome of the trial." *United States v. Agurs*, 427 U.S. 97 at 110, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976). Since the contents of the audit were not revealed to the trial judge, there was no way that he could determine whether it contained exculpatory evidence that was material to guilt or to punishment in a way that might have affected the outcome of the trial. The Government argues that the appellant's net worth analysis and spending habits information would not have negated or tended to negate his *receipt* of unreported income.[3] This question should have been determined by the trial court only after he had examined and considered the contents of the audit. It is obvious that neither the trial court nor this court can decide cases in a vacuum, nor pass on facts that are not in the record.

We conclude that this case cannot be properly disposed of until the contents of the I.R.S. audit are revealed to the trial court in an in camera inspection and he has made findings and conclusions as to whether the audit contains exculpatory evidence that is material to the guilt or to the punishment of appellant, and which might have

---

2. The appellant did not testify, and there is no evidence who, if anyone, received an economic benefit from the payments.

3. The Government admits that such evidence might be exculpatory in a prosecution under 26 U.S.C., § 7201 for attempted tax evasion.

affected the outcome of the trial. This part of the case is remanded to the trial court for this purpose. We affirm the trial court's judgment as to the rest of the case.

The trial court is directed to make such in camera examination of the I.R.S. audit of appellant's tax records for 1974 and 1975, and in the event the court finds and concludes that the audit contains exculpatory evidence that is material to the guilt, or to the punishment of appellant, and which might have affected the outcome of the trial, the court is authorized and directed to take appropriate action in the case.

On the other hand, if the court finds and concludes that the audit does not contain such exculpatory evidence, he is authorized and directed to enter an order on the mandate affirming the judgment of conviction and sentence of appellant by the trial court.

AFFIRMED in part and REMANDED in part to the Trial Court with instructions.

ALVIN B. RUBIN, Circuit Judge, concurring in part, dissenting in part:

As my brethren note, the defendant did not ask for, and was not entitled to receive under the discovery rules in criminal cases, Rule 16, F.R.Cr.Proc., and *Brady v. Maryland*, 1963, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, as interpreted in *United States v. Agurs*, 1967, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342, everything in the government's files. He sought that material that would "*tend to negate the receipt of unreported income by the defendant in the amounts alleged in the indictment.*" (Request 3) This is less vague than a request merely for exculpatory materials, but is hardly as specific as a request for a particular item. As to what was embraced in Request 4, set forth in full in the text of the opinion, we must conjecture, for the words used fail to convey any specific meaning to me; I cannot determine whether the defendant was seeking the names of witnesses, materials reflecting the names of witnesses, or Internal Revenue Service "statements," whatever those may be.

The failure to produce material specifically requested by the defense that is in fact available to the government may be ground for a new trial. But we must distinguish between such a dereliction and the prosecutor's failure merely to meet the constitutional duty, as interpreted in *Brady, supra*, and as further developed in *Agurs, supra*. If the prosecution has failed to produce exculpatory material not specifically requested by the defendant, the Constitution requires a new trial "if the omitted evidence creates a reasonable doubt that did not otherwise exist." *Agurs, supra*, 427 U.S. at 112, 96 S.Ct. at 2401, 49 L.Ed.2d at 355. If the prosecutor fails to respond to a specific request, one that gives "the prosecutor notice of exactly what the defense desire[s]," *Agurs, supra*, 427 U.S. at 106, 96 S.Ct. at 2398–2399, 49 L.Ed.2d at 351, "it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge. When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable." *Agurs, supra*, 427 U.S. at 106, 96 S.Ct. at 2399, 49 L.Ed.2d at 351. *Agurs* does not, however, hold that every such default, however inexcusable, requires a new trial. Weighed by the non-specific request standard, *Agurs, supra*, obviously does not require a new trial here for reasons I will discuss below. If we assume that this request gave the prosecutor notice of exactly what the defense desired, however, the necessity for a new trial has not been demonstrated, and, for reasons set forth below, the procedure mandated by the opinion to determine that question appears to me to be ill-advised.

Let us return to the question whether the requests were specific in the *Agurs* sense; i. e., that the material requested exists and that the request told the prosecutor exactly what the defense desired. I assume that there was a net worth investigation, that annual balance sheets of the kind customarily prepared in such investigations exist for the years 1974 and 1975, and that they may show: (a) *no increase in net worth for each year not reflected in reported income or nontaxable income*; (b) some increase in net

worth not reflected in reported income or non-taxable income, but an increase amounting to substantially less than $15,000 each year; (c) similar increases in net worth equal to or in excess of $15,000. Analyses of the kind mentioned in (a) and (b) would tend to indicate that there is no unreported income that resulted in a net worth increase, but they would not disprove the receipt of income that was taxable and disbursed for purposes that did not result in an increase in net worth.

The value of the net worth analysis lies in proving the positive, not the negative: an increase in net worth not accounted for leads inescapably to the conclusion that there was income to enhance the taxpayer's worth, but the absence of a net worth increase does not have the same force in proving that all income was reported.

The evidence here is overwhelming that $15,000 in cash was put in the defendant's hands each year. The defendant virtually admits it. The defense was simply that the money was not income to him and he was merely a courier who carried the bag. Of course, we do not know, as my brethren say, what might be in the materials requested that would negate the receipt of $15,000 in unreported income each year. Let us conjecture: if the defendant received $15,000 each year and spent it for personal purposes, the result would not be reflected in his net worth at the end of either year. If, for example, he gambled all or part of it away, or spent it, at his own discretion, to benefit public officials, or expended it on personal extravagances, a net worth analysis showing that he had no unreported increase in net worth, or an unreported increase in net worth to a sum less than $15,000 would not per se negate his receipt of $15,000 each year as income. The audit might demonstrate fiscal rectitude in other regards, but there were character witnesses aplenty to testify to the defendant's general impeccability.

The request was not for the balance sheets for 1974 or 1975. It was not for income reconstructions. It sought to put on the prosecutor the task of evaluating what might exist that would achieve the end of exonerating the defendant. Much travail would have been saved, and likely nothing lost to the government, had the prosecutor either produced what the government had, *Cannon v. Alabama*, 5 Cir. 1977, 558 F.2d 1211, 1213, or responded by indicating the nature of the material in his possession and asking that the request be made specific so that he could determine his duty. The Supreme Court has said in *Agurs, supra*, 427 U.S. at 108, 96 S.Ct. at 2399, 49 L.Ed.2d at 352, "[T]he prudent prosecutor will resolve doubtful questions in favor of disclosure." But this was not done, and the failure by the government thus to cure what appears to be a lack of the necessary particularity in the request should not occasion a new trial.

No evidence is admissible unless it is relevant, Rule 402, Federal Rules of Evidence, and that means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." Rule 401, *id. See also* McCormick on Evidence, § 185 at 437 (2d Ed. 1972). If, however, a prosecutor fails, even in response to a specific request, to adduce the evidentiary material requested, a new trial is not automatically granted: the test is not whether the material was *admissible*, that is not merely relevant, but, whether it "is *material*, or indeed [whether] a substantial basis for claiming materiality exists." *United States v. Agurs, supra*, 427 U.S. at 106, 96 S.Ct. at 2399, 49 L.Ed.2d at 351. Because the actual holding in *Agurs* deals with the duty to produce exculpatory evidence in accordance with the "defendant's right to a fair trial mandated by the Due Process Clause of the Fifth Amendment to the Constitution," *id.*, 427 U.S. at 107, 96 S.Ct. at 2399, 49 L.Ed.2d at 352, we cannot automatically apply its standard here: but we now know that, in such cases, a new trial must be granted "if the omitted evidence creates a reasonable doubt that did not otherwise exist, . . . ." 427 U.S. at 112, 96 S.Ct. at 2401, 49 L.Ed.2d at 355. Presumably, the test is less stringent if there is a request for specific material, the material in fact exists, and is not pro-

duced. But nothing in *Brady, supra,* or in *Agurs, supra,* or in Rule 16 makes even the willful failure to produce every item of requested relevant material *ipso facto* ground for reversal.

In *United States v. Anderson,* 5 Cir. 1978, 574 F.2d 1347, Judge Hill discusses the various failure-to-disclose situations. It is unnecessary to repeat that excellent summary here. Let me assume, however, that the requests were specific in the sense that *Agurs, supra,* defines that term. It appears to be implicit in the *Agurs* rationale that, even if the prosecution's failure was inexcusable, this does not necessarily require a new trial. There must be some showing that the suppressed evidence might have affected the outcome of the trial. Presumably, the test to be applied would be the same test that applies if the prosecutor fails to comply with a request for discovery made in accordance with Rule 16, Federal Rules of Criminal Procedure; it must be shown that the defendant was prejudiced by the nondisclosure. *United States v. Ross,* 5 Cir. 1975, 511 F.2d 757, 764; *United States v. James,* 5 Cir. 1974, 495 F.2d 434, 436; *United States v. Saitta,* 5 Cir. 1971, 443 F.2d 830, 831. In this respect, I agree with the criterion adopted by my brethren as sufficient to show prejudice: it must be shown that the material "might have affected the outcome of the trial."

But the mandate does not confine itself to directing the trial judge to search for the specific items requested, to determine whether they exist, and, if so, whether prejudice resulted from their non-production. It directs a general search for "exculpatory evidence that is material to the guilt, or to the punishment of appellant, and which might have affected the outcome of the trial." It thus embraces both specific items and general exculpatory material, non-pro-

duction of which results in a new trial only if "the omitted evidence creates a reasonable doubt that does not otherwise exist." *Agurs, supra,* 96 S.Ct. 2401. Therefore, it directs a search for two different kinds of material and adopts the same standard for both.

Moreover, the mandate of my brethren requires the trial judge to examine documents in camera. A net worth investigation produces prodigious quantities of paper; the task of examining it is substantial. Assuming the utmost of industry, not every trial judge is capable of assimilating this data, which is based essentially on accounting concepts.[1] More important, even after trial, the judge does not know all of the possible theories of a case or all of the ways data in one party's hands might be used when combined with data available to the other side. What may seem insignificant to a judge may be of great potential value to an advocate; once he knows what the facts are, a lawyer may be able to demonstrate that what is apparently unimportant is, in fact, material. The converse is also true: given a chance to argue the point, the prosecutor may be able to show that what appears significant is of little real probative worth. In the interests of due process, and the opportunity of both the defendant to evaluate the evidence that may be helpful to him (as well as to confront the witnesses against him), as well as in the interest of affording the prosecutor a chance to brief and argue its case, I would require no more in camera duties of trial courts than those that are indispensable.

Therefore, I would simply affirm the conviction. The defendant may yet file a motion for post-conviction relief under Section 2255. He may pursue this motion with such discovery devices as are available.[2] The inquiry may then be more directly focused,

---

1. As it happens here, this experienced trial judge has unusual capabilities in this respect; he has a degree in accounting and actually worked as an accountant while attending law school.

2. The trial judge in his discretion may allow the use of those discovery devices applicable to civil and criminal proceedings. *Harris v. Nel-*

son, 1969, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281; *Ferrara v. United States,* 5 Cir. 1977, 547 F.2d 861; *United States ex rel. Seals v. Wiman,* 5 Cir. 1962, 304 F.2d 53. *See also* Rules Governing Section 2255 [28 U.S.C. § 2255] Proceedings, Rule 6, Act Sept. 28, 1976, P.L. 94–426, § 1, 90 Stat. 1334.

the subjects more specific, and the evidence may be viewed by the defendant, not merely by the court. Each side will also have a chance to be heard on the issues. Where this has been done, and due process afforded both sides, not in camera but in open court, the trial judge may determine whether there should be a new trial.

For these reasons, I respectfully DISSENT from the remand and the mandate to the trial judge.