634 P.2d 1244

**Richard BUZBEE, Reggie D. Bell, and Richard Chapman, Petitioner and Intervenors,**

v.

**Hon. Thomas A. DONNELLY, Hon. Lorenzo F. Garcia, Hon. Bruce E. Kaufman, District Judges, Respondents.**

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Richard Nave CHAPMAN, et al., and Narciso Telles Flores, et al., Defendants-Appellants.**

**Nos. 13783, 13789.**

Supreme Court of New Mexico.

Sept. 25, 1981.

Rehearing Denied Oct. 23, 1981.

Jeff Bingaman, Atty. Gen., Charles Baldonado, Deputy Sp. Prosecutor, Santa Fe, for plaintiff-appellee.

John Bigelow, Public Defender, Martha A. Daly, Asst. Appellate Defender, Mark Donatelli, Penitentiary Defense Director, Richard A. Winterbottom, Asst. Public Defender, Santa Fe, for petitioners Chapman & Flores.

Bruce J. MacAllister, Santa Fe, for appellant Sandoval.

William G. Walker, Albuquerque, for appellant Chavez.

Charles Driscoll, Albuquerque, for appellants Casaus & Sandoval.

John L. Walker, Albuquerque, for petitioner Buzbee.

Ellen Pines, Santa Fe, Garvin A. Isaacs, Oklahoma City, Okl., for appellant Colby.

Narciso Garcia, Jr., Albuquerque, for petitioner Bell.

C. Richard Baker, Chief Sp. Prosecutor, Charles Baldonado, Deputy Sp. Prosecutor, Theodore E. Lauer, Asst. Sp. Prosecutor, Santa Fe, for respondent District Judges.

Jeff Bingaman, Atty. Gen., Carol Jean Vigil, Heidi Topp Brooks, Asst. Attys. Gen., Santa Fe, for amicus curiae.

## OPINION

EASLEY, Chief Justice.

Decisions in five cases that came to us on interlocutory appeals and prerogative writs are consolidated in this opinion. Eight defendants are charged with ten counts of first-degree murder that occurred during the New Mexico State Penitentiary riot of February 1980, in which a total of thirty-three persons were killed.

In all cases, the defendants moved to dismiss the indictments, claiming that the prosecutors knowingly withheld exculpatory evidence from the grand jury, in violation of Section 31–6–11(B), N.M.S.A.1978 (Cum.Supp.1980). The trial courts in all cases denied defendants' motions to dismiss.

Two interlocutory appeals were granted by the Court of Appeals, which consolidated the cases and certified them to this Court. Three other cases came to this Court on writs of prohibition and were consolidated with the two cases from the Court of Appeals. Thus we address the issues in five cases on an in-depth basis in anticipation of the same and similar issues arising in subsequent riot cases. We affirm the decisions of all the trial courts on the issues raised.

Richard Nave Chapman, Herman Richard Buzbee and Michael Dennis Colby were indicted for the first-degree murder of Larry Wayne Smith. Jesus Jose Antunez, Paul Casaus, Lorenzo Chavez, Narciso Telles Flores and Jose Moises Sandoval were indicted for the first-degree murder of Ramon Acuna Madrid. Herman Richard Buzbee, Richard Nave Chapman and Reggie Bell were indicted jointly, but will be tried separately, for the first-degree murder of Donald Gossens.

The issues are:

1. Whether defendants' prior self-serving claims of innocence must be presented to the grand jury under the recent statute which requires the prosecutor to present evidence of which he is aware that directly negates guilt, or whether the evidence must also meet the other statutory test of being evidence such as would be admissible at trial.

2. Whether evidence, known to the prosecutor, which is contradictory to evidence submitted to the grand jury, qualifies as evidence that directly negates guilt and must be submitted to the grand jury.

3. Whether the refusal of the prosecutor to present to the grand jury prior statements by defendants that they are innocent, and other testimony that contradicted witnesses who testified before the grand jury, constitutes a violation of the defendants' due process rights to a fair trial.

4. Whether evidence that the prosecutor promised each of the grand jury witnesses that he would not be placed back in the New Mexico penitentiary system, must be presented to the grand jury as evidence that directly negates guilt, because it affects the credibility of witnesses.

The allegedly exculpatory evidence in each of these cases is of three types: (1) statements of defendants in which they denied involvement in any killings and claimed they never entered Cell Block 4, the site of these homicides; (2) prior statements of grand jury witnesses and other witnesses which are inconsistent with testimony presented to the grand jury, some of which reflected on the credibility of witnesses, and (3) promises made to grand jury witnesses that, if they gave statements, they would not be returned to the penitentiary of New Mexico or any other satellite facility.

The District Attorney admits that he was aware of the withheld evidence in question and that it was not presented to the grand jury. It is the State's position that the prosecutors had no duty to present these types of evidence.

*HISTORICAL BACKGROUND*

For over eight hundred years, since the Assize of Clarendon in 1166, the English institution of the grand jury has been in existence. I W. Holdsworth, *History of English Law* 321–23 (7th rev. ed. 1956). Over the centuries in Great Britain, the grand jury not only served to discover and present for trial persons suspected of criminal wrongdoing, but also served to protect the citizens against oppressive actions by the Crown.

Blackstone, in describing the function of the grand jury said: "they are only to hear evidence on behalf of the prosecution: for the finding of an indictment is only in the nature of an enquiry or accusation, which is afterwards to be tried and determined; and the grand jury are only to enquire upon their oaths, whether there be sufficient cause to call upon the party to answer it." IV W. Blackstone, *Commentaries on the Laws of England*, 300 (1769). The grand jury was abolished in Great Britain in 1933.

The grand jury's historic functions were found by our early settlers to be basic to the protection of individual liberties, and the grand jury was transplanted here as a closely-guarded institution in the basic law of our country.

There has been a continuing debate over the years, particularly in the federal system, concerning the respective relationships of the Executive and Judicial Branches to the federal grand jury. Some claim that the court has broad discretionary powers to supervise the grand jury; others assert that the grand jury is an arm of the Executive, since it is basically a law enforcement agency. The United States Supreme Court, in *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), pointed out that the grand jury is a pre-constitutional institution, given constitutional stature by the Fifth Amendment but not relegated by the Constitution to a position within any of the three branches of the government. "The federal grand jury is a constitutional fixture in its own right ...." *Nixon v. Sirica*, 487 F.2d 700, 712 n. 54 (D.C.Cir. 1973); *United States v. Chanen*, 549 F.2d 1306 (9th Cir.), *cert. denied*, 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977).

In fact, under the common law and constitutional provisions, the grand jury is considered to be an independent agency from both the Executive and the Judicial Departments, with "both court and prosecutor play[ing] supportive and complementary roles." *Chanen, supra* at 1312.

In *Chanen*, the court held that courts should not encroach upon the manner in which the prosecutor presents the government's case to the grand jury "unless there is a clear basis in fact and law for doing so", because it "could readily prove subversive of the doctrine of separation of powers." *Id.* at 1313. "But under the constitutional scheme, the grand jury is not and should not be captive to any of the three branches." *Id.* at 1312.

The framers of the New Mexico Constitution saw fit to create the grand jury under the Bill of Rights, instead of placing it under the Executive Department or the Judiciary. N.M.Const. art. 2, § 14. Our Constitution also contains a provision that a criminal defendant may be charged by information as well as by grand jury indictment, and provides details as to the make-up of the grand jury and its procedures.

Generally, the additions made were consistent with the common law practices at the time our State Constitution was written.

Except for statutory provisions, hereinafter discussed, the basic laws and decisions governing grand juries have been remarkably similar between the states and the federal system. Federal constitutional considerations make the federal decisions germane to most every case. There is a vast body of case law, some of it in hopeless conflict. We present cases representative of the general principles.

The responsibilities of the grand jury have changed very infrequently and very little over the years and continue to include both the determination of whether there is probable cause that a person committed a crime and the protection of citizens from the arbitrary and oppressive acts of their government. *Calandra, supra.* The grand jury "has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused . . . ." *Wood v. Georgia,* 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569 (1962). Wide latitude has been given to grand juries to investigate criminal activity. Generally, the grand jury system is unrestrained by the technical, procedural and evidentiary rules governing the conduct of criminal trials. *Calandra, supra.*

The traditional role of the grand jury is described by Mr. Justice Jackson in his dissenting opinion in *Cassell v. Texas,* 339 U.S. 282, 302, 70 S.Ct. 629, 639, 94 L.Ed. 839 (1950):

Its power is only to accuse, not to convict. Its indictment does not even create a presumption of guilt; all that it charges must later be proved before the trial jury, and then beyond a reasonable doubt. The grand jury need not be unanimous. It does not hear both sides but only the prosecution's evidence, and does not face the problem of a choice between two adversaries. Its duty is to indict if the prosecution's evidence, unexplained, uncontradicted and unsupported, would warrant a conviction. If so, its indictment merely puts the accused to trial. The difference between the function of the trial jury and the function of the grand jury is all the difference between deciding a case and merely deciding that a case should be tried.

Mr. Justice Holmes authored *Holt v. United States,* 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910), in which it was charged that the indictment should be dismissed because incompetent evidence had been presented to the grand jury. The Court denied the relief, saying: "The abuses of criminal practice would be enhanced if indictments could be upset on such a ground." *Id.* at 248, 31 S.Ct. at 4. The United States Supreme Court has also refused to invalidate an indictment from a grand jury that considered evidence that had been obtained in violation of the Fourth Amendment, *Calandra, supra,* and in which evidence had been obtained in violation of the Fifth Amendment; and *Lawn v. United States,* 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958).

The following cases represent the general rule or great weight of authority in the federal system. The government need not produce percipient witnesses to testify before the grand jury. *United States v. Short,* 493 F.2d 1170 (9th Cir. 1974). An accused has no right to be called as a witness before a grand jury that is considering his indictment. *United States v. Salsedo,* 607 F.2d 318 (9th Cir. 1979). There is a strong presumption of regularity accorded to the findings of grand juries. *United States v. West,* 549 F.2d 545 (8th Cir.), *cert. denied,* 430 U.S. 956, 97 S.Ct. 1601, 51 L.Ed.2d 806 (1977). A federal prosecutor is the hand of the President in the prosecution of offenses, and the courts are not to interfere with the free exercise of discretionary powers of the prosecutor in his control over criminal prosecutions. *United States v. Cox,* 342 F.2d 167 (5th Cir.), *cert. denied, Cox v. Hauberg,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965).

Generally, courts have been most cautious in invalidating indictments for alleged

grand jury misconduct of the prosecutor. *Beatrice Foods Co. v. United States*, 312 F.2d 29 (8th Cir.), *cert. denied*, 373 U.S. 904, 83 S.Ct. 1289, 10 L.Ed.2d 199 (1963). In *United States v. Samango*, 607 F.2d 877, 881 (9th Cir. 1979), the court said, "The Court's power to dismiss an indictment on the ground of prosecutorial misconduct is frequently discussed but rarely invoked." Dismissal has been limited to those few instances where the prosecutor has clearly abused the grand jury process. 8 Moore's Federal Practice, 2d Edition ¶ 6.04[1] (1981).

Even where the government knows that an indictment is based partially on perjured testimony, the court must consider whether the perjured testimony is material. *United States v. Basurto*, 497 F.2d 781 (9th Cir. 1974). Perjured testimony does not call for dismissal where the testimony before the grand jury, excluding the allegedly perjured testimony, showed sufficient competent evidence to prove probable cause. *Coppedge v. United States*, 311 F.2d 128 (D.C.Cir.1962), *cert. denied*, 373 U.S. 946, 83 S.Ct. 1541, 10 L.Ed.2d 701 (1963). Only in a flagrant case, and perhaps where knowing perjury, relating to a material matter, has been presented to the grand jury should the trial judge dismiss an otherwise valid indictment returned by an apparently unbiased grand jury. To hold otherwise would allow a mini-trial as to each presented indictment. *United States v. Kennedy*, 564 F.2d 1329 (9th Cir. 1977), *cert. denied, Myers v. U. S.*, 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978).

In 1956 the United States Supreme Court handed down what has proven to be a landmark decision bearing on the issues involved here in *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). The single issue presented was whether a defendant may be required to stand trial and a conviction be sustained where only hearsay evidence was presented to the grand jury. Costello claimed a violation of his Fifth Amendment rights under the grand jury section.

The *Costello* Court discussed Mr. Justice Holmes' opinion in *Holt, supra*, in which the Court held that abuses of criminal practice would be enhanced if indictments could be upset on such a ground. The Court in *Costello* added:

The same thing is true where as here all the evidence before the grand jury was in the nature of "hearsay." If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more.

350 U.S. at 363, 76 S.Ct. at 408–09.

The Court stated that there were no persuasive reasons to establish a rule permitting such challenges; that such a rule would run counter to the whole history of the grand jury institution; that neither justice nor the concept of a fair trial requires such a change. The Court found that the defendants would have a right to strict observance in the trial of the case to all of the rules designed to bring about a fair verdict. "Defendants are not entitled, however, to a rule which would result in interminable delay but add nothing to the assurance of a fair trial." *Id.* at 364, 76 S.Ct. at 409.

*Costello* is the last word from the United States Supreme Court on the issues stated. There are hundreds of decisions out of lower federal courts attempting to apply *Costello* to varying factual patterns. Some of these and later Supreme Court cases which are claimed as relevant will be later analyzed in the context of due process issues.

So long as *Costello* remains a controlling opinion, a prosecutor can have no legally enforceable duty to divulge exculpatory

evidence to a grand jury. A prosecutor need only convince a grand jury to indict. He need not also convince a court that a grand jury's indictment was fair. Given the current state of the law, any contrary conclusion short of a Supreme Court decision or statutory authority is neither legally nor pragmatically binding.

Note, *Grand Jury: A Prosecutor Need Not Present Exculpatory Evidence*, 38 Wash. & Lee L.Rev. 110, 123 (1981).

With this historical backdrop, we examine the ways in which New Mexico's statutory and case law diverge from the general rules as indicated by the above cases.

One very significant departure from the common law doctrine, giving prosecutors almost total discretion as to the kind of evidence that can be submitted to the grand jury, was the Act of February 7, 1854; 1853–54 N.M.Laws at p. 66; §§ 3128, 3129, N.M.S.A. 1915. It was provided that only "legal evidence", i.e., such as given by witnesses, "produced and sworn before them [the grand jury]"; or legal documentary evidence could be submitted. § 3128. "Legal evidence" and "the best evidence in degree, to the exclusion of hearsay or secondary evidence" is admissible. § 3129. This version of the law was in effect for 115 years, until it was slightly modified by 1969 N.M.Laws, ch. 276, § 11.

The amendments of 1969 added "other physical evidence" to the two types of evidence previously approved, that is, witness testimony and documentary evidence, and expanded the definition of permissible evidence to provide that "all evidence must be such as would be legally admissible upon trial." 1969 N.M.Laws, *supra.*

Amendments adopted in 1979 did not change the "legally admissible" requirement. However, in a paragraph in the same section, the Legislature added a new provision that requires the prosecutor to submit to the grand jury any evidence of which he is aware that "directly negates the guilt" of the defendant. § 31–6–11(B), N.M.S.A.1978 (Cum.Supp.1980). The full text reads:

31–6–11. *Evidence before grand jury.*

A. *Evidence* before the grand jury *upon which it may find an indictment* is the oral testimony of witnesses under oath and any documentary or other physical evidence exhibited to the jurors. *All evidence must be* such as would be *legally admissible* upon trial.

B. It is the duty of the grand jury to weigh all the evidence submitted to it, and when it has reason to believe that other *competent evidence* is available that may explain away or disprove a charge or accusation or that would make an indictment unjustified, then, it should order the evidence produced. The target shall be notified of his target status and be given an opportunity to testify, if he desires to do so, unless the prosecutor determines that notification may result in flight, endanger other persons, obstruct justice, or the prosecutor is unable with reasonable diligence to notify said person. The *prosecuting attorney* assisting the grand jury *shall present evidence that directly negates the guilt of the target* where he is aware of such evidence. (Emphasis added.)

Although it is not material to our decision here, the Legislature in 1981 further amended Section A, above, to eliminate the requirement that evidence be "legally admissible upon trial" and added this clause: "The sufficiency and competency of the evidence upon which an indictment is returned shall not be subject to review absent a showing of bad faith on the part of the prosecuting attorney assisting the grand jury." *Id.* (Cum.Supp.1981). Thus, New Mexico has gone full circle back to the common law. This amendment places our grand jury in much the same position as those in the federal system and makes the federal case law set out in this opinion even more significant in the future.

1. *DEFENDANTS' SELF–SERVING DECLARATIONS OF INNOCENCE*

The first question is whether defendants' self-serving declarations of innocence should have been presented to the grand jury as evidence directly negating guilt; or

whether the prosecutor was correct in withholding them because they were not evidence such as would be admissible at trial. Defendants claim that the statute mandates that evidence directly negating guilt must be submitted whether or not it would be admissible at trial, that the new language modifies and controls the old.

The issue calls for statutory construction to determine what the Legislature intended. We must examine these and related statutes in historical perspective and give the words their usual meaning. *Arnold v. State,* 94 N.M. 381, 610 P.2d 1210 (1980).

Our statutes in the past have been very favorable to targets of an investigation as compared to some other jurisdictions. They have limited the kinds of evidence that may be submitted to the grand jury. The 1969 amendment added to the types of evidence that could be introduced by the prosecutor. We can presume that the Legislature knew the meaning of the words it used at that time when it said: "All evidence must be such as would be legally admissible upon trial." The law was reasonably well settled at that time as to what evidence was admissible in a trial. The Legislature must have acted advisedly when it left that same sentence in the statute when an amendment was incorporated into the section in 1979 adding the provision that the prosecutor "shall present evidence that directly negates the guilt of the target. . . ."

The definition of evidence before a grand jury having been established for ten years as evidence that would be admissible on trial, the addition of a requirement that evidence directly negating guilt be submitted did not vary that definition. As it bears on the issue here, we hold that the statute as a whole means the prosecutor shall present evidence, that would be admissible at trial, which directly negates the guilt of the target.

There is no question but that the defendants' claims that they are not guilty directly negates their guilt. The next question is whether the evidence is such as would be admissible at trial. The answer is

that the statements are inadmissible as hearsay, except under certain situations that are not pertinent here. *See State v. Duran,* 91 N.M. 35, 570 P.2d 36 (N.M.App.), *cert. denied,* 91 N.M. 3, 569 P.2d 413 (1977), *cert. denied,* 435 U.S. 972, 98 S.Ct. 1615, 56 L.Ed.2d 65 (1978); *State v. Hunt,* 83 N.M. 753, 497 P.2d 755 (Ct.App.), *cert. denied,* 83 N.M. 740, 497 P.2d 742 (1972); *State v. Snow,* 84 N.M. 399, 503 P.2d 1177 (Ct.App.), *cert. denied,* 84 N.M. 390, 503 P.2d 1168 (1972); *State v. Russell,* 37 N.M. 131, 19 P.2d 742 (1933); *State v. Davis,* 30 N.M. 395, 234 P. 311 (1925); *State v. Klasner,* 19 N.M. 474, 145 P. 679 (1914) and 2 Wharton's Criminal Evidence, § 303, (13th ed. 1972); 29 Am.Jur.2d *Evidence* § 621 (1967 & Am. Supp.1981). Wharton explains that "A self-serving declaration is excluded because there is nothing to guarantee its testimonial trustworthiness. If such evidence were admissible, the door would be thrown open for obvious abuse. . . ." *Id.* at 98.

We hold that the prosecutor properly withheld the statements because they were not such evidence as would be admissible at trial. We affirm the decisions of the trial courts in this regard.

## 2. *CONTRADICTORY EVIDENCE WITHHELD*

Defendants claim that the indictments should be dismissed because the prosecutor withheld other evidence from the grand jury of which he was aware that contradicted evidence submitted to the grand jury. The essence of this claim is that the prosecutor must submit *all* evidence to the grand jury that tends to negate the guilt of defendants, regardless of whether it is direct or circumstantial, material or immaterial, and whether admissible or inadmissible at trial.

We summarize the withheld statements as follows:

1. A witness, who did not testify before the grand jury, did not identify a defendant in his statement as being one of those implicated.

2. A witness identified a defendant in testifying before the grand jury but had

not identified the same defendant in his prior statement.

3. A witness, who did not testify before the grand jury, said in a statement that the way a murder was carried out was different than what was described by other witnesses before the grand jury.

4. A witness, who testified before the grand jury, named other persons as participants but not the defendant.

5. A witness whose grand jury testimony implicated a defendant had given a previous statement in which he was confused as to the identity of the defendant.

6. Statements that the killers were masked.

7. Statements that a defendant was present for a while at a killing, but the witness did not see the defendant participate in the killing.

8. A witness, who testified before the grand jury, but changed his mind or made a mistake as to the identity of the perpetrator in his prior statement.

■ Although this indirect or circumstantial evidence may be inconsistent with that presented to the grand jury, we inquire whether it directly negates guilt. Basic to the analysis of this issue is a determination of the legislative intent in specifying that evidence *directly* negating guilt should be furnished the grand jury. A most logical assumption is that the intent was also to proscribe the use of evidence *indirectly* negating guilt. When a statute uses terms of art, we interpret these terms in accordance with case law interpretation or statutory definition of those words, if any. *See State v. Aragon*, 55 N.M. 423, 234 P.2d 358 (1951); *State v. Grissom*, 35 N.M. 323, 298 P. 666 (1931); *Burch v. Ortiz*, 31 N.M. 427, 246 P.2d 908 (1926); *Bradley v. United States*, 410 U.S. 605, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973).

Neither the statutes nor case law give us any help with a specific definition of the term "directly negating" guilt. · However, given the history of the statutes here, where hearsay and secondary evidence were specifically not allowed for 115 years and the fact that the law was then changed to allow any evidence that would be admissible at trial, we believe the Legislature was thinking in terms of the traditional categories of evidence. The only common sense explanation for the use of the words in question is that the Legislature intended to permit the use of *direct* evidence negating guilt and to prohibit the use of indirect, or circumstantial, evidence negating guilt.

■ Direct evidence is evidence which, if believed, proves the existence of the fact without inference or presumption. *People v. Thomas*, 87 Cal.App.3d 1014, 151 Cal. Rptr. 483 (Ct.App.1979); *State v. Thompson*, 519 S.W.2d 789 (Tenn.1975); *Frazier v. State*, 576 S.W.2d 617 (Tex.Cr.App.1978). Direct evidence is actual knowledge gained through a witness' senses. *State v. Hubbard*, 351 Mo. 143, 171 S.W.2d 701 (1943); *see also State v. Farrington*, 411 A.2d 396 (Me.1980); *State v. Musgrove*, 178 Mont. 162, 582 P.2d 1246 (1978).

The court in *State v. Lewis*, 177 Neb. 173, 128 N.W.2d 610, 613 (1964), used the following definition: "Otherwise stated, direct evidence is proof of facts by witnesses who saw acts done or heard words spoken, while circumstantial evidence is proof of collateral facts and circumstances from which the mind infers the conclusion that the facts sought to be established in fact existed." *United Textile Workers v. Newberry Mills, Inc.*, 238 F.Supp. 366, 372 (W.D.S.C.1965).

■ All of the withheld evidence in our case, other than the self-serving statements of defendants, is circumstantial in nature. It does not directly negate the guilt of the defendants. It must be aided by inferences or presumptions. The prosecutor had no duty under the statutes to submit this evidence to the grand jury.

Our decision on this issue differs in part with the theory expressed in dicta by the Court of Appeals in *State v. Herrera*, 93 N.M. 442, 601 P.2d 75 (N.M.App.1979), and followed in later cases, which holds that knowingly withholding *exculpatory* evidence from a grand jury denies the defendant due process. That Court obviously

holds the view that "evidence tending to negate" guilt, "exculpatory" evidence and evidence directly negating guilt all have the same meaning. *State v. Harge*, 94 N.M. 11, 606 P.2d 1105 (N.M.App.1979). The terms have also been used synonymously by the Court of Appeals in *State v. Sanchez*, 95 N.M. 27, 618 P.2d 371 (N.M.App.1980); *State v. Lampman*, 95 N.M. 279, 620 P.2d 1304 (N.M.App.1980); *State v. Gonzales*, 95 N.M. 636, 624 P.2d 1033 (N.M.App.1981).

In *Gonzales* the Court stated: "Exculpatory evidence is evidence reasonably tending to negate guilt." Withholding such evidence violates defendants' due process rights, the Court said. *State v. Payne*, 96 N.M. 347, 630 P.2d 299 (N.M.App.1981). Our opinion in *Maldonado v. State*, 93 N.M. 670, 604 P.2d 363 (1979) did not address this issue directly.

Prior to the enactment of the statute in question, our courts were concerned only with "exculpatory" evidence in the context of our dispute here. Until the Legislature used the term "directly" negating guilt there was no need to define terms. It is plain that there are at least two distinct types of exculpatory evidence, i. e., direct exculpatory evidence and circumstantial exculpatory evidence. Since the plain meaning of the statute is that the prosecutor is obligated to present to the grand jury only direct exculpatory evidence, we hold that it was not error for him to withhold circumstantial exculpatory evidence. That evidence was inadmissible to the same extent as secondary and hearsay evidence under the old statute. To the extent that *Payne, supra; Gonzales, supra; Sanchez, supra; Lampman, supra; Harge, supra; Herrera, supra*; and other cases are contrary to our opinion on this issue, they are hereby specifically overruled.

Defendants rely heavily on *Johnson v. Superior Court*, 124 Cal.Rptr. 32, 539 P.2d 792 (1975), in which that court based its decision on statutory grounds and declined to consider due process and equal protection issues. Our statute is very similar to the one that was considered in *Johnson* in that the California law gave the grand jury the right to order evidence produced which it has reason to believe will explain away the charge. The Court in *Johnson* ruled that an indictment was subject to dismissal where the prosecutor had knowledge of such evidence, but did not produce it, even though neither the defendant nor the grand jury requested that it be presented. We reject the reasoning that would force a prosecutor to engage in a guessing game as to what bits and pieces of evidence might tend to be exculpatory at trial and then demand that the prosecutor produce *all* of it for the grand jury, whether or not requested by the grand jury.

In fact, for evidence to be admissible at trial on behalf of the defendant, it must all be relevant to his innocence, that is, it must reasonably tend to negate guilt. Thus, to apply the *Johnson* standard would be to saddle the State in many instances with the burden of presenting the defendant's whole case to the grand jury, as well as the State's case. This would lead to ridiculous consequences and would be a subversion of many of the traditional purposes of the grand jury system. We refuse to adopt such a drastic and unwarranted position.

█ Much of the withheld circumstantial evidence would have reflected on the credibility of the witnesses who testified before the grand jury. Defendants would have us dismiss the indictment because this evidence was not presented for that purpose. In the absence of flagrant prosecutorial misconduct that was responsible for the jury indicting a defendant, we decline to adopt a rule that an indictment is bad because it is based on testimony of a witness whose credibility may later be subject to question. *United States v. Sullivan*, 578 F.2d 121 (5th Cir. 1978). "Such a rule of law would necessitate independent judicial review of the credibility of grand jury witnesses, an exercise that would infringe upon the traditional independence of the grand jury." *United States v. Guillette*, 547 F.2d 743, 753 (2d Cir. 1976), *cert. denied*, 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 102 (1977); *United States v. Brown*, 574 F.2d 1274 (5th Cir.), *cert. denied*, 439 U.S. 1046, 99 S.Ct. 720, 58 L.Ed.2d 704 (1978).

### 3. DUE PROCESS CONSIDERATIONS

█ Defendants claim that the failure of the prosecutor to present all the evidence in question to the grand jury violates their Fifth Amendment rights to a fair trial. Although our decision on the first two points effectively disposes of the issues on statutory grounds, we feel constrained to address the due process questions in order to clarify this Court's position in that regard. We are aware of the 1981 amendment which eliminates the sentence that required all evidence to be such as would be admissible at trial. Thus, we look at the federal case law with new interest.

The United States Supreme Court has held that a primary duty of the grand jury is to protect the innocent from oppressive prosecution. *Wood v. Georgia, supra.* "While recognizing this function, the Supreme Court has nevertheless repeatedly shaped its holdings so as to prevent litigious interference with grand jury proceedings." Comment, *Grand Jury,* 11 Rutgers-Camden L. J. 359, 363 (1980); *Calandra, supra; United States v. Dionisio,* 410 U.S. 1, 18, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973); *Costello, supra;* Keeney and Walsh, American Bar Association's Grand Jury Principles, 14 Idaho L.Rev. 545 (1978). However, one case in particular, *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which does not mention evidence in a grand jury context, is having a profound influence on some lower federal courts. After examining further the rationale which we perceive supports the Supreme Court's present rulings, we will discuss the theories developed from *Brady.*

The United States Supreme Court in *Dionisio, supra* at 17, 93 S.Ct. at 773, stated:

> Any holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws.

Courts do not want exclusionary rules, suppression hearings, evidentiary rules or mini-trials to disrupt or delay the grand jury's function. Keeney and Walsh, *supra.*

In *Lawn, supra* at 349, 78 S.Ct. at 317, the Court stated that the United States Supreme Court had several times ruled that an "indictment returned by a legally constituted nonbiased grand jury, like an information drawn by a prosecutor, if valid on its face, is enough to call for a trial of the charge on the merits and satisfies the requirements of the Fifth Amendment." (*Citing Holt, supra.*)

In *United States v. Blue,* 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966), the Supreme Court held that, if the government acquired incriminating evidence in violation of the Fifth Amendment and presented that evidence to the grand jury, the defendant was not entitled to quash the indictment, but would, at most, be entitled to suppress the evidence at trial.

The Supreme Court refused to extend the exclusionary rule to grand jury proceedings in *Calandra, supra,* because of the potential injury to the historic role and functions of the grand jury, holding that such action would seriously impede the grand jury, delay and disrupt the proceedings, halt the orderly progress of investigations, necessitate extended litigation of issues only tangentially related to the primary objective, and result in protracted interruption.

*Costello* is still the law of the land. There is no Supreme Court ruling requiring exculpatory evidence to be presented. That Court has never ruled that withholding exculpatory evidence from a grand jury violates a target's due process rights to a fair trial and that this requires the dismissal of an indictment. However, a few lower federal courts and state courts have done so, generally based upon flagrant prosecutorial misconduct resulting in unfairness to defendants. In the vast majority of the cases the courts have refused to question the integrity of grand jury indictments.

Numerous recent federal cases have addressed the issue of prosecutorial misconduct in failing to present various types of evidence to the grand jury and whether dismissals of the indictments were warranted. There is no requirement under the

federal laws or rules that evidence negating guilt shall be submitted to a grand jury. Since New Mexico has such a requirement, these cases are examined solely in relation to due process questions arising out of a failure to present this type of evidence.

The court, in *United States v. Cederquist*, 641 F.2d 1347 (9th Cir. 1981), recognized that an indictment may be dismissed for prosecutorial misconduct based upon the Fifth Amendment's Due Process Clause or upon the court's inherent supervisory powers but stated that the constitutionally-based independence of grand juries and prosecutors necessarily limits a court's review of the grand jury proceedings. Evidence was withheld which circumstantially negated criminal intent. The court held that dismissal is required only in flagrant cases in which the grand jury has been overreached or deceived in some significant way and where the prosecutor's conduct significantly infringed upon the ability of the grand jury to exercise its independent judgment.

Other cases are: *United States v. Lasky*, 600 F.2d 765 (9th Cir.), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979) (prosecution is not required to present the grand jury with evidence which would tend to negate guilt); *United States v. Trass*, 644 F.2d 791 (9th Cir. 1981) (the prosecutor need not present all available exculpatory information or all material bearing on the credibility of potential witnesses); *United States v. Wander*, 601 F.2d 1251 (3d Cir. 1979) (speculative views of the prosecutor on the credibility of witnesses need not be submitted); *United States v. Ciambrone*, 601 F.2d 616 (2d Cir. 1979) (an indictment is not defective because a defendant did not have an opportunity to present his version of the facts before the grand jury. The prosecutor had failed to advise the grand jury that the defendant had been threatened, which motivated him to testify falsely at a prior trial.); *United States v. Kennedy*, 564 F.2d 1329 (9th Cir.), *cert. denied, Myers v. U. S.*, 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978), (dismissal is warranted only in a flagrant case of failure to present exculpatory matter, and

perhaps where knowing perjury, relating to a material matter, has been presented to the grand jury).

The Tenth Circuit Court of Appeals has steadfastly refused to "pierce the armor" of the grand jury and has held that "indicted defendants do not have a right to challenge the fairness of a grand jury." *United States v. Thomas*, 632 F.2d 837, 846 (10th Cir. 1980). The court relied heavily on *Costello* in refusing to dismiss an indictment handed down by grand jurors who were exposed to news stories concerning local heroin traffic, which allegedly biased the members. *United States v. Hubbard*, 603 F.2d 137 (10th Cir. 1979) (submission of hearsay and conjecture to the grand jury does not warrant dismissal of indictment); *United States v. Addington*, 471 F.2d 560 (10th Cir. 1973).

The Court in *United States v. DeVincent*, 632 F.2d 155 (1st Cir. 1980), pointed out that to accede to the defendant's position that an indictment be dismissed for failure to submit evidence would involve considerable duplication of effort and would endanger compliance with the various time limits.

Implicit in the decisions of most of the courts that have addressed the issue of the dismissal of an indictment because of prosecutorial misconduct or basic unfairness that violates due process, is the concept that substantial prejudice to the defendant must be demonstrated before the province of the independent grand jury is invaded. *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *United States v. Birdman*, 602 F.2d 547 (3d Cir. 1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980); *United States v. Addington, supra*.

The courts that have dismissed indictments have generally recognized the prosecutor's right to use some discretion in the presentation of evidence to a grand jury but have ruled that this does not entitle him to mislead it or to engage in fundamentally unfair tactics. *Ciambrone, supra*; Comment, *Grand Jury, supra*. Examples of "fundamentally unfair tactics" are: (1) the

prosecution obtaining an indictment on basis of evidence known to be perjurous; and (2) the prosecution leading a grand jury to believe it has received eye-witness rather than hearsay testimony. *Id.; United States v. Basurto*, 497 F.2d 781 (9th Cir. 1974); *United States v. Estepa*, 471 F.2d 1132 (2d Cir. 1972).

However, the court in *Ciambrone, supra,* took a contrary view and ruled that the failure of the attorney to reveal the possible existence of threats against the defendant's life fell far short of the kind of misleading conduct or deception that would warrant dismissal of the indictment.

Cases holding that the grand jury must be advised of exculpatory information are: *United States v. Provenzano*, 440 F.Supp. 561 (S.D.N.Y.1977); *United States v. Phillips Petroleum Co.*, 435 F.Supp. 610 (N.D. Okl.1977); *United States v. Braniff Airways, Inc.*, 428 F.Supp. 579 (W.D.Tex.1977); *United States v. DeMarco*, 401 F.Supp. 505 (C.D.Cal.1975), *aff'd*, 550 F.2d 1224 (9th Cir.), *cert. denied*, 434 U.S. 827, 98 S.Ct. 105, 54 L.Ed.2d 85 (1977).

It is claimed that the majority view will result in the erosion of the power and effectiveness of the grand jury, by allowing a prosecutor to mislead it by withholding relevant evidence tending to negate the defendant's guilt. Comment, *Grand Jury, supra.*

Other cases in which indictments were dismissed are *United States v. Basurto, supra; United States v. Gallo*, 394 F.Supp. 310 (D.Conn.1975). In *Basurto, supra,* the prosecutor learned prior to trial that an unindicted co-conspirator, who had testified to the defendants' activities before the grand jury, had lied in material respects. The prosecutor did not notify the court or the grand jury of the perjury and proceeded to trial. The court held that the Due Process Clause of the Fifth Amendment is violated where the indictment is based partially on perjured testimony, where the perjured testimony is material, and when jeopardy has not attached. *See United States v. Goldman*, 451 F.Supp. 518 (S.D.N.Y.1978); *Frink v. State*, 597 P.2d 154 (Alaska 1979); *Giefels v. State*, 590 P.2d 55 (Alaska 1979); *State v. Harwood*, 45 Or.App. 931, 609 P.2d 1312 (Ct.App.1980).

It is significant, however, that the Second Circuit's decision in *Ciambrone* is the only federal finding at the circuit level that suggests a prosecutor must divulge exculpatory information to a grand jury, and that finding was only dicta. Note, *supra* 38 Wash. & Lee L.Rev. 110 (1981). "Rather than give the *Estepa* rule constitutional standing, the second circuit justified its holding in *Estepa* as an extension of its supervisory power over the district courts." *Id.; Estepa, supra.*

"None of the courts that have dismissed indictments address the Supreme Court's holding in *Costello* that a court should not dismiss a facially valid indictment because the grand jury heard inadequate evidence." Note, *supra* 38 Wash. & Lee L.Rev. 117 (1981).

A few lower federal courts have attempted to extend the *Costello* rule, or circumvent it, by applying the principles enunciated in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Court in *Brady* held that the prosecutor has a duty to divulge exculpatory evidence to a defendant when that defendant requests specific material before trial. *Brady does not* address what type of evidence ought to be submitted before a grand jury. It is a pre-trial discovery case. In their efforts to develop more liberal guidelines than are indicated in *Costello*, some courts are looking to *Brady*. To do this, courts have equated a grand jury proceeding with a trial.

We decline to follow this reasoning, as it has some obvious flaws. The determination of materiality of a breach of a prosecutor's duty to disclose favorable evidence to the defendant is different in the grand jury context than it is at trial because the standard of proof required is different. *Galtieri v. Wainwright*, 582 F.2d 348 (5th Cir. 1978). The grand jury standard is probable cause, while at trial it is proof beyond a reasonable doubt. The materiality and quantum of evidence to show probable cause, justifying

the return of an indictment, is far less than is necessary at trial to prove a defendant's guilt beyond a reasonable doubt. An indictment is only a formal accusation of guilt. *See State v. Blea,* 84 N.M. 595, 506 P.2d 339 (Ct.App.1973). A stricter test of materiality is placed on evidence withheld from a grand jury because its finding of probable cause is much harder to overcome by the withheld evidence than a verdict of guilt beyond a reasonable doubt by the jury at trial. Thus, the quantum and materiality of suppressed evidence required for remedial court action is greater at the grand jury level. This is evident in our case. Each of the defendants has been linked with the murder of one or more of the victims by eye-witness testimony. Defendants' protestations of innocence and other circumstantial exculpatory evidence was withheld. Even if the withheld evidence had gone to the grand jury, it is plain that the indictments would still be fully supported on the issue of probable cause. However, it is equally clear that withholding some of this exculpatory evidence at trial would taint a verdict.

In *Brady,* a request was made for statements, but the prosecution failed to disclose to Brady before or during trial his companion's statement in which the latter confessed to the killing for which Brady was being prosecuted. The Supreme Court held that the suppression of evidence "favorable to the defendant on request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.,* 373 U.S. at 87, 83 S.Ct. at 1196–97. *Brady* adopts a concept of fairness, rather than dwelling on prosecutorial misconduct, and focuses on prejudice to the defendant.

*Brady* established the prosecution's constitutional obligation to disclose evidence that would be material to the defense of the accused. The lower federal courts immediately started fashioning standards, but it was not until *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) that the Supreme Court identified the criteria to be used to decide whether evidence is sufficiently "material" to make its nondisclosure a constitutional error. *United States v. Weidman,* 572 F.2d 1199 (7th Cir.), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978).

In *Agurs,* as in *Brady,* the Court was not ruling on an evidentiary question affecting a grand jury, but one involved in the trial of the case.

The Court in *Agurs,* established three levels of materiality for the excluded evidence at trial: (1) that which the prosecutor knew to be perjured, in which case the conviction must be set aside if there is a "reasonable likelihood that the false testimony could have effected the judgment of the jury." *Id.,* 427 U.S. at 103, 96 S.Ct. at 2397; (2) specific evidence for which there has been a pretrial request. "[I]mplicit in the requirement of materiality is the concern that the suppressed evidence might have effected the outcome of the trial." *Id.* at 104, 96 S.Ct. at 2398; (3) where a general request or no request has been made, the test is whether the omitted evidence creates a reasonable doubt as to the defendant's guilt that did not otherwise exist.

"We are dealing with the defendant's right to a fair trial mandated by the Due Process Clause of the Fifth Amendment...." *Id.* at 107, 96 S.Ct. at 2399. The construction would apply to the comparable clause in the Fourteenth Amendment applicable to trials in state courts. The Court held that if evidence has no probative significance, no purpose would be served to order a new trial because of its suppression.

> It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial.

*Id.* at 112–3, 96 S.Ct. at 2402.

The Tenth Circuit court in *United States v. Jackson,* 579 F.2d 553 (10th Cir.), *cert. denied, Allen v. U. S.,* 439 U.S. 981, 99 S.Ct.

569, 58 L.Ed.2d 652 (1978), has placed the burden on the defendant to establish that the failure to disclose evidence under the *Agurs* test is a denial of due process. *See United States v. Harris*, 462 F.2d 1033 (10th Cir. 1972); *United States v. Brumley*, 466 F.2d 911 (10th Cir. 1972), *cert. denied*, 412 U.S. 929, 93 S.Ct. 2755, 37 L.Ed.2d 156 (1973).

In *United States v. Gaston*, 608 F.2d 607 (5th Cir. 1979), the court held that in determining whether the nondisclosure of evidence rises to denial of due process, a strict standard of materiality is applied. *People v. Filis*, 87 Misc.2d 1067, 386 N.Y.S.2d 988 (1976); *Wander, supra; Trass, supra. United States v. Gardner*, 611 F.2d 770 (9th Cir. 1980) holds that if the prosecution is uncertain about the materiality of the information within its possession, it may submit that information to the trial court for an *in camera* inspection and evaluation. *United States v. Brown*, 574 F.2d 1274 (5th Cir. 1978).

The language used by our Court of Appeals, that withholding exculpatory evidence violates a defendant's due process rights, in effect, establishes a per se sanction of dismissal if any exculpatory evidence is knowingly withheld. This leaves no room for considering whether the absence of the evidence affected the outcome of the grand jury proceeding or whether the defendant suffered any prejudice, both of which are required in most other jurisdictions that permit challenges to grand jury indictments.

To serve the public interest by an automatic sanction of dismissal under these circumstances is to disservice another public interest by frustrating prosecution of criminals. *Birdman, supra.* Such a ruling would lead in our case to windfall dismissals of the indictments against these defendants where even the slightest bit of inconsequential exculpatory evidence has been withheld. We reject this view of the law and overrule *Herrera* and the succeeding cases that adopt, or appear to adopt, this view.

We dispose of these issues on state statutory grounds. We do not perceive a due process question. The United States Supreme Court has not mandated that a due process violation exists under circumstances such as ours. *Costello, supra.* We find no compelling reason to do so.

■ This Court ruled in *State v. Chance*, 29 N.M. 34, 221 P. 183 (1923) that an indictment duly returned into court and regular on its face cannot be challenged with respect to the kind and degree of evidence. The Court further held that there would have to be clear statutory authority authorizing such a review, and that in its absence, the courts are without power to review the sufficiency, legality or competency of the evidence upon which an indictment is returned. There is no court review provided in our statutes.

We still subscribe to the decision in *Chance.* We hold that opening up indictments for challenge would halt the orderly progress of investigations, would cause extended litigation on unimportant issues and would frustrate the public's interest in the fair and expeditious administration of the criminal laws. It would be an intrusion into the separate provinces of the constitutionally independent offices of the grand jury and the prosecutor. In any event, the claimed misconduct would be cured at trial.

We have said that the grand jury should not be the tool of the prosecutor and that he *must* abide by the letter and the spirit of the laws, including the one precluding the use of inadmissible evidence when obtaining indictments. *Maldonado, supra.* That holds true here. But, we are further holding that failure to do so does not reach constitutional dimensions under the circumstances. Although the 1981 amendment does not require admissible evidence, there was no change made in Section 31–6–6, N.M.S.A. 1978, which provides for the grand jurors to take an oath that they will receive "legal evidence", and no change made in Section 31–6–11(B), which sets forth the grand jury's right to order "competent" evidence produced if they have reason to believe it is available. The amendment made no real change. Part of the grand jury reforms in 1979, which were

designed to prevent prevelant abuses of the grand jury system by some prosecutors, was the statutory proviso that: "The prosecuting attorney shall conduct himself in a fair and impartial manner at all times when assisting the grand jury." The prosecutor oath as a lawyer and his duties as an officer of this Court demand no less.

■ We do not find a due process violation here. However, even if we did adopt the rule of some other jurisdictions that an indictment may be overturned under the due process clause for "flagrant prosecutorial misconduct", the defendants would receive no relief. The prosecutors in our cases were simply following the directions of the Legislature by withholding the evidence in question. There was not the perjury, deceit or malicious overreaching found to be essential before most courts would permit an attack on an indictment. There is no showing that the prosecutors' conduct infringed upon the independent judgment of the grand jurors.

■ Furthermore, if we applied the tough *Brady-Agurs* test to the evidence here, defendants would not prevail. In examining the record we find that, as to each defendant, the evidence withheld is not of sufficient materiality to suggest that it would, if introduced, have changed the vote of the grand jury on the issue of probable cause. Considering the eye-witness testimony to the murders and other information, the omitted evidence does not create a reasonable doubt of any defendant's guilt. There is no likelihood that the introduction of the evidence would have changed the result.

The trial courts were not in error on this issue.

## 4. *PROMISES BY THE PROSECUTOR TO WITNESSES*

■ The prosecutor promised each penitentiary inmate who testified that he would not be returned to the New Mexico State Penitentiary or any of its satellite facilities. Defendants claim these agreements should have been presented to the grand jury be-

cause they are material to the issue of credibility of the witnesses. This issue is settled by holdings elsewhere in this opinion regarding the withholding of evidence bearing on the credibility of witnesses.

We affirm the decisions of the various trial courts as to all issues and defendants and remand the cases to the district courts for trial.

IT IS SO ORDERED.

FEDERICI and RIORDAN, JJ., concur.

SOSA, Senior Justice, and WOOD, Senior Judge, Court of Appeals, respectfully dissenting.

SOSA, Senior Justice, and WOOD, Senior Judge, dissenting.

We dissent from the holding that the prosecutor had no duty to present defendants' exculpatory statements to the grand jury. We specially concur with the remainder of the majority's opinion.

A grand jury determines whether there is probable cause to accuse, and also protects persons against unfounded accusations. § 31–6–10, N.M.S.A.1978 (Cum.Supp.1980). *See Baird v. State*, 90 N.M. 667, 568 P.2d 193 (1977). In performing these functions, a grand jury hears evidence presented by the prosecutor. The Legislature has directed the prosecutor to conduct himself or herself fairly and impartially, § 31–6–7, N.M.S.A.1978 (Cum.Supp.1980), and to present evidence which negates the guilt of the target when the prosecutor is aware of that evidence, § 31–6–11(B), N.M.S.A.1978 (Cum.Supp.1980). Consistent with these legislative requirements, a grand jury "is not, and should not be, the tool of the prosecuting authority to manipulate at will." *Davis v. Traub*, 90 N.M. 498, 500, 565 P.2d 1015, 1017 (1977). These appeals present the question of whether the prosecutor withheld exculpatory evidence from the grand jury. We discuss: (1) the standard for presentation of exculpatory evidence; (2) what is exculpatory evidence; (3) how exculpatory evidence is determined; and (4) the exculpatory evidence claims made.

### 1. The Standard For Presenting Exculpatory Evidence To A Grand Jury

The prosecutor is to present exculpatory evidence when such evidence is known to the prosecutor. § 31–6–11(B); see State v. Herrera, 93 N.M. 442, 601 P.2d 75 (N.M. App.1979). Recently, in State v. Payne, 96 N.M. 347, 630 P.2d 299 (N.M.App.1981), the Court of Appeals suggested that "known" might include "should have known." This suggestion is not involved in these appeals; it is undisputed that the withheld evidence, allegedly exculpatory, was known to the prosecutor.

In Herrera, supra at 444, 601 P.2d at 77, the Court of Appeals held that "[a] knowing withholding of evidence tending to negate guilt is fundamentally unfair and violates due process." Section 31–6–11(B) requires the presentation of evidence that "directly negates" guilt. In light of our definition of exculpatory evidence, and how that evidence is to be determined, it is unnecessary to determine, in these cases, whether there is any material difference in the two requirements. If the withheld evidence did not "tend" to negate guilt, it did not "directly" negate guilt. We use the "tend to" phrase hereinafter, but this use is not to be taken as adoption of that phrase as the standard.

### 2. What Is Exculpatory Evidence?

Section 31–6–11(B) refers to evidence which negates guilt. Evidence which negates guilt is exculpatory evidence; that is, evidence that indicates the defendant is not guilty of the crime charged. Herrera, supra. Webster's Third New International Dictionary 794 (1976) states that exculpate "indicates a freeing from blame, fault, or guilt." Exculpatory evidence comprehends evidence which tends to negate guilt or, stated affirmatively, supports the innocence of the defendant. Com. v. St. Germain, —— Mass. ——, 408 N.E.2d 1358, 1363 n.6 (1980).

Evidence is not exculpatory "merely because the defendant so labels it." Evidence is not exculpatory even though it may be favorable to the defendant if the evidence "is merely collateral or impeaching." To be exculpatory, that is, to negate guilt, the evidence must tend "to establish defendant's innocence of the crimes charged." Com. v. Lochman, 265 Pa.Super. 429, 402 A.2d 513, 518 (1979).

### 3. How Exculpatory Evidence Is To Be Determined

In determining whether evidence is exculpatory, the withheld evidence is not to be evaluated in relation to evidence that was presented to the grand jury. See Maldonado v. State, 93 N.M. 670, 604 P.2d 363 (1979). The allegedly exculpatory evidence is to be evaluated without reference to any other evidence. See Payne, supra. Whether withheld evidence is exculpatory is not to be determined on the basis of the prosecutor's subjective belief, Herrera, supra, or on the basis of the prosecutor's belief that the withheld evidence is false. State v. Sanchez, 95 N.M. 27, 618 P.2d 371 (N.M.App. 1980).

Whether evidence is exculpatory is to be determined by objectively examining the withheld evidence and determining whether, in itself, the withheld evidence indicates that a defendant is not guilty of the crime charged. Herrera, supra; State v. Harge, 94 N.M. 11, 606 P.2d 1105 (N.M.App.1979). The withheld evidence in Herrera, that defendant was not present at the time of the child abuse or at the time of prior acts of child abuse, indicated that defendant was not guilty of aiding or abetting the child abuse and, thus, it was exculpatory. The withheld evidence in State v. Gonzales, 95 N.M. 636, 624 P.2d 1033 (N.M.App.1981), that the victim's vehicle forced defendant's pickup off the street, did not indicate whether the defendant did or did not shoot the victim in self-defense and, thus, was not exculpatory.

### 4. The Exculpatory Claims Made

The claims made by defendants divide into three parts: (A) defendants' exculpatory statements; (B) evidence allegedly inconsistent with evidence presented to the grand jury; and (C) promises made to witnesses who testified before the grand jury.

## A. Defendants' Exculpatory Statements

Colby, in his statement, said that he never saw anyone killed during the penitentiary riot; that he never entered Cellblock 4, where Smith was killed.

Buzbee stated that he did not hit or kill anyone and that he did not go into Cellblock 4 during the riot.

Chapman stated that the extent of his activities during the riot was to help out some friends who had taken overdoses of drugs; then he overdosed himself and knew nothing until he woke up in the hospital.

Chavez stated that he remained in his unit during the riot except when he helped take some inmates outside; that he had no weapon and did not see anyone get murdered, hit or stabbed.

Bell stated that he did not get out of his cell until late in the riot and did not hurt anyone other than someone named Tapia, who had tried to hurt Bell.

The prosecutor does not contend that the statements of Colby, Buzbee, Chapman, Chavez and Bell are not exculpatory. The prosecutor contends that the requirement, stated in *Herrera, supra*, to present exculpatory evidence was modified by the legislative reforms enacted in 1979. This contention is not answered by the majority opinion.

As amended by 1979 N.M.Laws ch. 337, § 8, Section 31–6–11(B) reads:

B. It is the duty of the grand jury to weigh all the evidence submitted to it, and when it has reason to believe that other competent evidence is available that may explain away or disprove a charge or accusation or that would make an indictment unjustified, then, it should order the evidence produced. The target shall be notified of his target status and be given an opportunity to testify, if he desires to do so, unless the prosecutor determines that notification may result in flight, endanger other persons, obstruct justice, or the prosecutor is unable with reasonable diligence to notify said person. The prosecuting attorney assisting the grand jury shall present evidence that directly negates the guilt of the target where he is aware of such evidence.

The second sentence of § 31–6–11(B) permits the target, in some instances, to testify before the grand jury. The third sentence directs the prosecutor to present evidence which negates guilt. According to the prosecutor, the requirement that exculpatory evidence be presented applies only when the defendant is not able to present his testimony to the grand jury. Thus, the prosecutor would modify his duty to present exculpatory evidence as follows: 1) when given the opportunity to testify before the grand jury, defendant could present his own exculpatory statement and the prosecutor would have no obligation to do so; 2) in all other instances, it would be the prosecutor's obligation to present exculpatory evidence. Section 31–6–11(B) is not so worded.

The legislative direction to present exculpatory evidence does not depend on whether the target has an opportunity to testify before the grand jury; without qualification, the Legislature stated that exculpatory evidence "shall" be presented. This mandatory statutory direction, *see* § 12–2–2(I), N.M.S.A.1978, is not ambiguous and is to be given effect as written. *Methola v. County of Eddy*, 95 N.M. 329, 622 P.2d 234 (1980).

The prosecutor's contention that he has no duty to present a defendant's exculpatory statement when a target is given the opportunity to testify before the grand jury, would also introduce a procedural complication to the Legislature's unambiguous direction. The complication would be whether the target was given the opportunity to testify, and the answer would require several factual determinations. *See Rogers v. State*, 94 N.M. 218, 608 P.2d 530 (Ct.App.1980), concerning the opportunity to testify. If the defendant did not in fact testify, an evidentiary determination would be required as to whether a defendant had been given the opportunity to testify; this determination would have to be made in order to decide whether the prosecutor had the duty to present a defendant's exculpatory statement. A prosecutor cannot inter-

ject this procedural complication to avoid his noncompliance with the legislative requirement of § 31–6–11(B). Prosecutors must abide by the letter and spirit of the law. *Maldonado, supra.*

The prosecutor never argued in the district court that defendants' statements were inadmissible evidence. The argument was not raised in the State's briefs in the interlocutory appeals. In reaching and deciding this question, the majority of the Court has broken the long-established appellate rule that arguments not raised before the district court will not be considered on appeal. *State v. Parrillo,* 94 N.M. 98, 607 P.2d 636 (Ct.App.1979).

Section 31–6–11(A), N.M.S.A.1978 (Cum. Supp.1980), requires that evidence "such as would be legally admissible upon trial" be presented to the grand jury and that evidence "that directly negates the guilt of the target" be presented to the grand jury pursuant to § 31–6–11(B). The results reached when evidence which is exculpatory, as in this case, is also inadmissible, depend upon a review of the pertinent statutes, prior case law and sound public policy. We disagree with the majority's rigid construction of the statute, making it the rule that only admissible evidence be presented to the grand jury. We disagree because of (1) this Court's recent decision in *Maldonado, supra,* (2) the overriding public policy evident in the grand jury statutes that the grand jury have the benefit of evidence which gives it a full understanding of the facts of the case, and (3) established public policy favoring judicial economy and simplification of judicial procedures.

(1) In *Maldonado,* the defendant claimed that his indictment should have been dismissed because the prosecutors presented inadmissible evidence to the grand jury. Defendant relied specifically on Section 31–6–11(A). This Court, in a unanimous opinion, accepted the fact that inadmissible evidence was presented, but, nonetheless refused to reverse. *Maldonado* followed *State v. Chance,* 29 N.M. 34, 221 P. 183 (1923). Section 31-6-11(A) has been given no effect when called upon to protect a defendant's rights before the grand jury. The majority, in its opinion, utilizes this same provision to justify the prosecutor's failure to present clearly exculpatory evidence to the grand jury which is allegedly inadmissible. Basic fairness requires that provisions of our grand jury statutes be applied evenhandedly. *See* § 31–6–7, N.M. S.A.1978 (Cum.Supp.1980).

We are not unmindful of legislative intent. *Maldonado* reduced the requirement that only admissible evidence be presented to the grand jury to an unenforced directive. The Legislature apparently agreed with *Maldonado's* approach to the problem of inadmissible evidence before the grand jury. Since *Maldonado,* the Legislature amended Subsection (A) of § 31–6–11 (1981 N.M. Laws ch. 238, § 1), excluding the requirement that only evidence admissible at trial be presented to a grand jury. While the amended statute is not applicable to this case, the amendment shows a legislative intent that rules of evidence not be used to prevent a fully-enlightened grand jury.

(2) The function of the grand jury is to determine whether there is probable cause to accuse.

If the prosecutor is not obligated to present evidence tending to negate guilt, the grand jury hears only what the prosecutor wants it to hear, with the result that the grand jury becomes a tool of the prosecutor and is no longer independently making the probable cause determination required by the statute. Section 31–6–10, N.M.S.A.1978. A knowing withholding of evidence tending to negate guilt is fundamentally unfair and violates due process. *State v. McGill,* [89 N.M. 631, 556 P.2d 39 (Ct.App.1976)] supra.

*Herrera, supra,* 93 N.M. at 444, 601 P.2d at 77. *See* the dissent of Justice Botts in *Chance, supra.* An example of the grand jury becoming a tool of the prosecutor appears in *Sanchez, supra.* An opinion of this Court which allows prosecutors to shield from the grand jury evidence which, if believed, leads to the conclusion that defendant is not guilty of the crimes charged is contrary to clear legislative intent.

(3) Prior to this decision by the majority, judges faced with a motion to dismiss an indictment because of the exclusion of exculpatory evidence had two relatively simple questions to answer: (a) does the evidence negate guilt on the part of the accused, and (b) was it withheld from the grand jury? The majority opinion adds a third and far more complicated issue. The district court must determine if the withheld exculpatory evidence was admissible.

The admissibility or inadmissibility of evidence is rarely apparent by reference to the item of evidence alone. A determination of admissibility often requires that extensive foundational requirements be met. This problem becomes clear when one considers a situation where a third person makes an out-of-court statement which negates guilt on the part of the accused. The statement may be admissible evidence if the foundational requirements of any one of the hearsay exceptions is met. But how can a determination of the admissibility of the evidence be made at the grand jury stage of the proceedings?

We would hold that defendants' exculpatory statements given to investigators were wrongfully excluded from the grand jury. We would reverse the district court's order which refused to dismiss the indictments against defendants Chapman, Buzbee, Colby, Chavez and Bell.

### B. Withheld Evidence Inconsistent With Evidence Presented To The Grand Jury

All of the defendants claim that the withheld statements are inconsistent with the evidence presented to the grand jury.

The fact that withheld evidence is inconsistent with evidence presented to the grand jury raises no issue unless the withheld evidence is exculpatory. "Inconsistent" evidence does not equate to "exculpatory" evidence. For example: In statement A (withheld), the witness stated that he knew nothing about the crime being investigated. In statement B (presented to the grand jury), the witness stated that Jones committed the crime. Statements A and B are inconsistent, but neither are exculpatory of Jones. *State v. Lampman*, 95 N.M. 279, 620 P.2d 1304 (N.M.App.1980), is not to the contrary. The withheld statement in *Lampman*, attributed to the police officer investigating the accident, was that the victim's car came over into defendant's lane and hit defendant. Although the attributed statement was inconsistent with the police officer's testimony, reversal occurred because it was exculpatory and had been knowingly withheld.

The withheld statements relied on by defendants are not exculpatory because the statements, in themselves, do not negate the defendants' guilt of the crimes charged. This includes the statements examined by Judge Donnelly *in camera*. As an example, Melvin Kenneth Thomas signed a statement naming three participants in the killing of Madrid—Pete Esquibel, Jesus Antunuz and Moises Sandoval. Thomas stated he could only identify the three named, although others had participated. The questioner, in summarizing the statement, substituted the name of Casaus for Esquibel, and Thomas said: "Right. Paul Casaus shot him." Until the name of Casaus was substituted, Thomas' statement did not contain anything indicating Casaus was not involved in the killing of Madrid. After the name substitution, the statement became inculpatory as to Casaus.

The argument for considering Thomas' statement as exculpating Casaus is that Thomas named both Esquibel and Casaus as shooting the victim, and Thomas saw only one shooting. That Esquibel may have done the shooting witnessed by Thomas does not indicate that Casaus did not also shoot Madrid. Thomas' statement, although inconsistent, was not exculpatory.

The majority opinion goes to unwarranted extremes in ruling that the prosecutors had no duty to present the grand jury with evidence which is merely inconsistent with the grand jury testimony. We reach the same conclusion by relying on the plain meaning of § 31–6–11(B). We look at the words as written. *Methola, supra; State v. Ellenberger*, 96 N.M. 287, 629 P.2d 1216

(1981); and *Bd. of Cty. Com'rs, Etc. v. City of Las Vegas*, 95 N.M. 387, 622 P.2d 695 (1980). Nothing in the language of the statute supports the conclusion that the Legislature intended that the prosecutor present only direct evidence which directly negates guilt. Circumstantial evidence, if believed, may lead to inferences which also directly negate guilt. See *Herrera, supra*, for an example of circumstantial evidence which directly negated guilt, and *Gonzales, supra*, and *Payne, supra*, for examples of cases where circumstantial evidence did not negate guilt.

### C. Promises By The Prosecutor

Each penitentiary inmate who testified before the grand jury was promised that he would not be returned to the penitentiary or any satellite facility. These promises by the prosecutor were not disclosed to the grand jury.

These promises are not exculpatory evidence, as we have defined exculpatory evidence in this dissenting opinion. The promises might bear on the credibility of witnesses at trial, but the promises do not tend to negate the guilt of any defendant.

The defendants' position goes beyond an exculpatory evidence contention. They urge that all promises must be disclosed. Regardless, these promises to grand jury witnesses have been disclosed and defendants may make appropriate use of the promises at trial. This disclosure is not pertinent to the issue of withholding exculpatory evidence.

The indictments of Colby, Buzbee, Chapman, Chavez and Bell should be dismissed because of the prosecutors' failure to disclose their exculpatory statements to the grand jury. The refusals to dismiss the indictments of Casaus, Flores and Sandoval should be affirmed.